[Civ. No. 2544.  Third Appellate District.—May 5, 1923.]

## LEONARD J. GROSSMAN, Appellant, v. YIP WING, et al., Respondents.

[1] CLAIM AND DELIVERY — POSSESSION OF LAND UNDER CLAIM OF RIGHT—RIGHT TO CROPS.—In an action in claim and delivery, the plaintiff cannot support a right to the recovery of a certain crop of potatoes upon the theory that he is the owner and entitled to the possession of the land upon which the potatoes were grown and that the defendant was a trespasser and in occupation of the land without any right whatsoever, where the evidence shows that the defendant was in possession of the premises under a claim of right.

[2] ID.—ACTUAL POSSESSION IN GOOD FAITH—LITIGATION OF TITLE.— The question of title to land cannot be litigated and adjudicated in a personal action to recover the crops or emblements growing upon land as against the party who is actually seized or in possession of such land in good faith and under claim of right or color of title.

[3] ID.—OWNERSHIP OF CROPS.—Where one is in possession of land under a claim of right, holding the same adversely to all others, the crops grown by him on the land so held, whether severed from the land or still attached thereto, are his property.

[4] ID.—COLOR OF TITLE DEFINED.—Color of title means that which in appearance is title, but in fact is not a good title.

[5] ID.—OWNERSHIP OF LAND—POSSESSION BY ANOTHER.—RECOVERY OF CROPS—EVIDENCE.—In an action in claim and delivery to recover possession of certain potatoes, where neither plaintiff nor defendant succeeds in establishing title to the land upon which the potatoes were grown, but defendant proves that he was in possession of the land under a claim of right and color of title, the plaintiff

———————————

1. Right to maintain replevin for severed crops by or against one in adverse possession of land, note, 69 L. R. A. 737.

cannot recover, even though he be in fact the true owner of the land.

[6] ID.—DATE OF LEASE—OMISSION OF DAY OF MONTH—POSSESSION—PRESUMPTION.—Where a lease introduced in evidence bears date "March ——, 1921," and the evidence shows that the lessee entered into possession of the property therein on a certain date during the early part of that month, the presumption is that he entered upon and took possession of the premises under such lease, and not that he entered upon and took possession of the premises and thereafter secured the lease. (Opinion on denial of rehearing.)

[7] ID.—CLAIM OF RIGHT TO LAND—EVIDENCE.—In this action in claim and delivery to recover possession of certain potatoes, the evidence was such as to justify the trial court in determining that the tract of land upon which the potatoes were grown by defendant was embraced within the exterior boundaries of the larger tract of land described in defendant's lease. (Opinion on denial of rehearing.)

APPEAL from a judgment of the Superior Court of San Joaquin County. J. A. Plummer, Judge. Affirmed.

The facts are stated in the opinion of the court.

Hadsell, Sweet & Ingalls and Nat A. Brown for Appellant.

Louttit & Stewart for Respondents.

HART, J.—This is an action in claim and delivery whereby the plaintiff demands the recovery of a certain crop of potatoes, growing, at the time of the commencement of this action, on approximately six acres of land, situate on Mildred Island, San Joaquin County.

It appears that the plaintiff, upon the issuance of summons in the action, which was commenced on September 12, 1921, claimed delivery of the potatoes to him (sec. 509, Code Civ. Proc.), and, in pursuance of sections 510, 511 and 512 of said code, the same were seized and taken by the sheriff. It was stipulated that the quantity of potatoes taken from the ground by the sheriff under the writ of replevin consisted of 818 sacks, of the aggregate value of $1,249.66, and that of the 818 sacks so taken 370 sacks were sold by the plaintiff.

Plaintiff was at the several times referred to in the pleadings and the evidence a resident of the city of Atlanta, in the state of Georgia. On the fifteenth day of April, 1919, he duly appointed one Harry B. Barker, of the city of Gary, county of Lake, state of Indiana, his attorney in fact, with authority "to buy, lease, sell, mortgage, deed, take, convey in trust or otherwise, and to do all other things that I might do if personally present with regard to real property everywhere and likewise." This power, in short, is in all respects sufficient to vest Barker with the authority to carry on any transaction with regard to the real property of the plaintiff wherever situated that he himself could or might do. On the fourth day of December, 1918, one Joseph Basile, Junior, and Genevieve Basile, his wife, by a deed of said date, granted and conveyed to the plaintiff certain lands in San Joaquin County which comprised Survey Nos. 593, 628, 629, and 1184, Swamp and Overflowed Lands in township 2 north, range 4 east, Mt. Diablo meridian, which lands are described by metes and bounds in the instrument of conveyance. The plaintiff claims that these lands embrace all of said Mildred Island.

In the month of March, 1921, the defendant, Seid Pak Yuen, under what purported to be a lease from one Joseph Pavliger and dated "March, 1921," the day of said month not appearing in the lease, entered into the possession of 110 acres of land situated on said Mildred Island. Said lease comprised four different parcels of land, the same having come down to Pavliger through one Louis Sanders from as many different grantors.

The amended complaint alleges that on or before the eighth day of March, 1921, plaintiff was the owner and in actual possession of the lands comprising the whole of Mildred Island, and that on the eighth day of March, 1921, the defendants entered upon the six acres in question "against the will and without the consent of plaintiff and without claim or color of title on the part of defendants or either of them; that thereafter defendants planted thereon a crop of potatoes which is now in said ground and in a condition to be harvested"; that plaintiff is the owner of and entitled to the possession of all of said potatoes now growing on said tract of land and that the same is wrongfully detained by the defendants.

The answer specifically denies the allegations of the amended complaint and as an affirmative defense alleges that the six acres of land upon which the crop of potatoes was growing at the time said potatoes were seized under the writ of replevin were situated within the exterior lines of the 110 acres above referred to as being the property of Joseph Pavliger and that the said Seid Pak Yuen entered into the possession of said six acres under the lease from Pavliger to him. There are two other special defenses set up in the answer of. Seid Pak Yuen, 'but these are of no special consequence in the determination of the question presented here. The defendant Yip Wing filed a disclaimer, in which he declared that he has and claims no right, title, or interest in and to the real property in dispute.

The court found that the said defendant entered into and took possession of the six acres of land in question "in good faith and as the tenant of one Joseph Pavliger, under a claim of right and color of title, and that he thereupon planted thereon a crop of potatoes, raised said crop of potatoes and the same was in condition to be harvested at the time of the commencement of plaintiff's action on the twelfth day of September, 1921, and that at the time of the commencement of plaintiff's action the defendant was, ever since has been, and he now is in possession of said tract of six acres under a claim of right and color of title and in good faith and adverse to the claims of the plaintiff; . . . ; that the plaintiff is not, nor at the time of said seizure was, the owner of or entitled to the possession of all or any part of said 818 sacks of potatoes grown upon said tract," and that, "it is not true that the whole or any part of said potatoes is or was wrongfully detained by the defendants or either of them from the plaintiff." The judgment was that the plaintiff return to ·the defendant said 818 sacks of potatoes or the value thereof, "and as said potatoes cannot be returned on account of sales made by the plaintiff, defendant, Seid Pak Yuen, is entitled to recover the value thereof, to wit, the sum of $1,249.66, together with interest on said sum of $1,249.66 from the twelfth day of September, 1921."

The appeal is by the plaintiff from said judgment.

The only evidence produced by the plaintiff in support of his claim of title to the land in dispute was the deed by

Basile and his wife to him. The defendant introduced in evidence a number of deeds purporting to convey title to the 110 acres, of which the defendant, Seid Pak Yuen, claims to hold possession under the lease from Pavliger. These instruments purported to be conveyances of the four parcels constituting said 110 acres to the predecessors in title of Louis Sanders and conveyances to Louis Sanders. There was also introduced in evidence a letter referring to a contract of sale between the purported owner of one of the parcels constituting the 110 acres and Louis Sanders whereby the former agreed to sell and the latter agreed to purchase said parcel of land for a certain specified amount, payable in certain specified monthly installments. The instruments so referred to constituted the only record evidence introduced by the defendant for the purpose of supporting the title of his lessor to the land in dispute.

It will be noted from the foregoing that neither the plaintiff nor the defendant deraigned title to the property in controversy from the paramount source of title. They did not connect their respective grantors with any prior title whatsoever. The court, if required to pass upon the question of title in this case, could not determine in whom the title to the 110 acres claimed by Pavliger or, for that matter, title to any other part of Mildred Island is vested.

As to the possession of Mildred Island by the plaintiff, the evidence was to the effect that the plaintiff's agent, said Barker, entered into possession of the island in the year 1920. The island at that time was entirely covered with water and Barker, so he testified, proceeded with necessary steps for the reclamation of the island so as to put it in a condition for farming purposes. He stated that his operations extended over the entire island, including the six acres in dispute. He said: "We protected the banks with piling, built levees with dredgers, dug ditches and cleaned out and ran canals. We worked on the entire island. During the year 1920 we were the only people on the island." Referring to the fact that the defendant was in the occupation of a portion of the lands claimed by the plaintiff he testified: "Around the 8th of March, 1921, I heard that the Chinamen, these people we have the suit with, were on the island. I immediately hired a speed boat and in company with Kelly, the operator of the boat, went to the place

where the Chinamen were on the island. There were several Chinamen there together on the levee and I went up to them and asked who was in charge and defendant, Frank Yip or Young Yip, said he was. I told him that· they, the Chinamen, had no right on the island and ordered him off.'' He further stated that in reply ''Frank Yip,'' as the witness named him, called him an opprobrious name and ordered him ''to get off or he would kill me. At that time,'' proceeded the witness, ''there were four or five Chinamen present with him and I noticed a couple of shotguns on the premises, one lying on the ground and one leaning against the shed. When the Chinamen threatened to kill me I left the island and returned to Stockton. These Chinamen remained in possession of certain portions of the island. I never gave them permission to remain and they have remained against my will. They planted a crop of potatoes and this crop is still in the ground and was at the time of the commencement of this action.''

As to the exact location of the six acres of land in dispute, the evidence appears to be rather vague and uncertain. There were two witnesses, civil engineers by profession, who testified that the deeds and contract whereby Louis Sanders became the owner of the four parcels of land above referred to, and which are relied upon by the defendants as constituting color of title in him, described the lands sufficiently to enable them to be identified as the lands constituting the 110 acres within the exterior boundaries of which it is claimed the six acres in question are embraced. There was some other testimony regarding the location of said six acres and which tended to locate them within the boundaries of the 110 acres. The trial court, while declaring in a written opinion, filed in the case and which is incorporated in the brief of counsel for the defendant, that the six acres were not located with absolute clearness, nevertheless, held that there was sufficient testimony to warrant it in concluding that said six acres was a narrow strip overlapping the four parcels described in the instruments purporting to convey the 110 acres to the defendant's lessor. We are satisfied that the court was justified in reaching this conclusion and making its finding as to that matter accordingly.

We may assume that the plaintiff's testimony, as above related, taken without regard to any adverse showing, is

sufficient to show that the plaintiff was, through his attorney in fact, in actual possession of the entire island. It also must be conceded that actual possession of property is good as against a stranger or a trespasser—that is, one who is a mere intruder or "squatter" and not holding possession adversely, in good faith under claim of right or color of title.

[1] Plaintiff, however, attempted to support his right to the recovery of the crop of potatoes upon the theory that he is the owner and entitled to the possession of the six acres of land upon which the potatoes were grown and that the defendant was a trespasser and in occupation of said land without any right whatsoever. This cannot be done as against one in possession of the premises under a claim of right; [2] for it is well settled in this state that the question of title cannot be litigated and adjudicated in a personal action to recover the crops or emblements growing upon land as against the party who is actually seised or in possession of such land in good faith and under claim of right or color of title. (*Halleck* v. *Mixer*, 16 Cal. 579; *Kimball* v. *Lohmas*, 31 Cal. 154; *Page* v. *Fowler*, 39 Cal. 415 [2 Am. Rep. 462]; *Pennybecker* v. *McDougal*, 46 Cal. 661; *Martin* v. *Thompson*, 62 Cal. 618 [45 Am. Rep. 663]; *Smith* v. *Cunningham*, 67 Cal. 262 [7 Pac. 679]; *Wilson* v. *Atkinson*, 77 Cal. 485 [11 Am. St. Rep. 299, 20 Pac. 66]; *Emerson* v. *Whitaker*, 83 Cal. 147 [23 Pac. 285]; *Groome* v. *Almstead*, 101 Cal. 425 [35 Pac. 1021]; *Johnston* v. *Fish*, 105 Cal. 420 [45 Am. St. Rep 53, 38 Pac. 979]; *Hines* v. *Good*, 128 Cal. 38 [79 Am. St. Rep. 22, 60 Pac. 527].) In *Halleck* v. *Mixer*, Judge Field states the rule as follows, quoting from the syllabi: "In suits for timber cut and removed, as in this case, the true rule, so far as the title to the land is concerned, is this: The plaintiff out of possession cannot sue for the property severed from the freehold, when the defendant is in possession of the premises from which the property was severed, holding them adversely, in good faith, under claim and color of title. In other words, the personal action cannot be made the means of litigating and determining the title to real property as between conflicting claimants."

The above rule has been uniformly followed in California and is expounded and applied in the cases above mentioned in connection with the case of *Halleck* v. *Mixer, supra.*

[3] We are satisfied that where one is in possession of land under a claim of right, holding the same adversely to all others, the crops grown by him on the land so held, whether severed from the land or still attached thereto, are his property. In this case the plaintiff, as the purported owner of the land, was not dealing with a trespasser, since the record clearly shows that Seid Pak Yuen entered into, took possession of and occupied the premises in controversy in good faith under a claim of right and adversely to all other persons claiming any interest in said premises. [4] Color of title means that which in appearance is title, but in fact is not a good title. (*United States* v. *Casterlin*, 164 Fed. 437, 439; *Whitney Lumber & Grain Co.* v. *Crabtree*, 166 Fed. 738, 740 [92 C. C. A. 400]; *Knight* v. *Grim*, 110 Va. 400 [19 Ann. Cas. 400, 66 S. E. 42, 43]; *Montoya* v. *Unknown Heirs of Vigil*, 16 N. M. 349 [120 Pac. 676, 688].)

Under section 322 of our Code of Civil Procedure land is deemed to be held adversely, except in certain particulars not material here, "when it appears that the occupant, or those under whom he claims, entered into the possession of the property under claim of title, exclusive of other right, founding such claim upon a written instrument, as being a conveyance of the property in question, or upon the decree or judgment of a competent court, and that there has been a continued occupation and possession of the property included in such instrument, decree, or judgment or some part of the property under such claim," and section 323 of said code provides that "for the purpose of constituting an adverse possession by a person claiming under such deed or judgment, the land is deemed to have been possessed and occupied where it has been usually cultivated or improved or where, although not enclosed, it has been used for the supply of fuel, or of fencing timber for the purpose of husbandry, or for pasturage, or for the ordinary use of the occupant." (See *Owsley* v. *Matson*, 156 Cal. 401, 403 [104 Pac. 983, wherein is cited the case of *Wilson* v. *Atkinson*, 77 Cal. 485 [11 Am. St. Rep. 299, 20 Pac. 66].) It has even been held that "a tax deed, though void on its face, if containing a proper description of the land, is sufficient to give color of title under which a claimant of title in good faith may found an adverse possession, so as to set the stat-

utes of limitation in motion. It is a written instrument, upon which a claim of title may be founded as being a conveyance of the property in question, within the meaning of section 322 of the Code of Civil Procedure and is effective as notice of the extent of the possession and claim under it." (*Wilson* v. *Atkinson, supra.*) In the last-mentioned case it is further said, quoting from the syllabi: "In order to begin an adverse possession under a claim of title, within the meaning of section 322 of the Code of Civil Procedure the adverse occupant must enter and hold the land in good faith, believing his conveyance to be valid. Knowledge that the instrument is absolutely void will vitiate the claim of title; but such knowledge must be actual, and not such as would arise from the legal construction of the instrument."

[5] In this case, as we have seen, the defendant, Seid Pak Yuen, entered into the possession of the premises in dispute under a lease purporting to have been executed by a party who supported his title to the property by certain deeds, etc., or muniments of title. The possession of the defendant was open and notorious and hostile to that of any other claimant of the property. There is nothing in the record indicating that the defendant did not enter into the possession of said premises in good faith, believing that his lease from Pavliger vested in him the legal right to take and hold such possession. In other words, there is absolutely no evidence in the record tending in any degree to show that Seid Pak Yuen, when taking the lease from Pavliger and entering into the possession of the land described in said instrument, had any knowledge of the fact, if it was a fact, that Pavliger's title to said land was questioned or of doubtful validity.

Conceding, then, that the plaintiff is the true owner of all of Mildred Island, including the premises in dispute, the defendant, being in possession of said land under a claim of right and color of title, was, under the authorities above cited, the owner of the crop of potatoes involved herein. The situation here, as it is presented by the record, is simply this: That neither the plaintiff nor the defendant succeeded in establishing title to the land in dispute. But the defendant proved actual possession under a claim of right, and as against such possession the plaintiff has no standing in an action to recover any crops produced by the defendant

upon said premises. If the plaintiff is the true owner of all of Mildred Island, including the land in controversy, his remedy as against the defendant and his lessor is in an action in ejectment and for the recovery of the value of the use and occupation of the land.

The judgment is affirmed.

Burnett, J., and Finch, P. J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on June 4, 1923, and the following opinion then rendered thereon:

HART, J.—There are two points upon which the application for a rehearing is pressed, to wit: 1. That the evidence fails to show that the defendants entered upon and took possession of the premises in dispute under the written lease from Pavliger to Seid Pak Yuen; 2. That the defendants failed to show, and there is no evidence that does show, that the six acres upon which the potatoes were planted and grown are embraced within the 110 acres of which Pavliger claims the ownership and which is described in the lease from said Pavliger to Seid Pak Yuen.

1. The point first above stated was not made at the trial of the case, but is raised for the first time on this appeal. For that reason we would be justified in refusing to review the point. The case was tried in the court below upon the theory that the defendants went into possession of the premises under the written lease from Pavliger to Seid Pak Yuen. The point should have been raised or made at the trial so that the defendants could have been given an opportunity to show, as in all probability they could have shown, that they took possession under said lease. But we will consider briefly the contention of counsel as to this point. Counsel first call attention to the fact that the lease from Pavliger to Seid Pak Yuen does not indicate the exact date of its execution. The lease bears the following date: "March ——, 1921," the day on which the instrument was executed being pretermitted. There was no showing or any attempt to show by parol or other means extrinsic to the lease itself what day the writing was executed. It was not acknowledged, nor, therefore, was it recorded. Nor is there

any positive testimony as to whether the defendant entered into the possession of the property under said lease, or entered under parol authority from Pavliger prior to the making of the written lease. From these considerations it is argued in the petition that the presumption following from the fact of the omission from the date of the lease the day of its execution and the failure otherwise to show the day upon which the writing was executed is that the instrument was executed on the last day of the month in which it is thereby shown that the writing was made and entered into by and between the parties. According to this theory, the lease in question was executed on the thirty-first day of March, 1921, or a trifle over three weeks after the defend-ants were found in occupancy of the premises in dispute. In support of this contention, counsel cite Jones on Evi-dence, section 19, and *Graves* v. *Lebanon Nat. Bank,* 10 Bush (Ky.), 23 [19 Am. Rep. 50, 57]. Upon all these con-siderations it is argued that it must be assumed that the de-fendants in the first instance took possession of the premises without authority from any person; that they were, there-fore, trespassers, and that, as is at least the necessary effect of the argument, they continued as such trespassers, not-withstanding that subsequently to their entry upon the premises they were given a lease of the same by one claim-ing to be the owner. [6] We do not think that the pre-sumption invoked and sought to be applied here by counsel for the appellant is applicable to this case. We are of the opinion rather that the presumption should be and is that the defendants entered upon and took possession of the premises under the lease. We cannot conceive how it may logically be maintained that a presumption of doing wrong is to follow from facts from which it is naturally to be inferred that a party did right. Here, as seen, the defend-ant, Seid Pak Yuen, had written evidence of the right to take possession of said property in the month of March, 1921, and it would seem absurd to say that, rather than to indulge the presumption that he took possession of the property under said authority, it must be presumed that he took possession wrongfully. There are several presumptions of law, disputable, of course, which we think apply to the case here. Subdivision 19 of section 1963 of the Code of Civil Procedure provides that private transactions are pre-

sumed to have been fair and regular. Subdivision 33 of the same section provides that it is to be presumed that the law has been obeyed and subdivision 11 of the same section declares: "That things which a person possesses are owned by him." Another presumption applicable here is that stated in subdivision 20 of section 1963 of the Code of Civil Procedure as follows: "That the ordinary course of business has been followed." From these views it follows that, if the point were of any importance whatsoever in the decision of this case, it was the duty of the plaintiff to have overcome the presumption that the taking of possession of the premises by the defendants was under the lease by proof that such taking of possession was neither under said lease nor by the sanction or authority of Pavliger. But the point, in our opinion, is of no significance or importance in the determination of the appeal herein; for if it were true that Seid Pak Yuen originally took possession of the lands without authority from anyone, and that thus for the time he became a trespasser as against the rights either of Pavliger or the plaintiff, yet, at the time this action was instituted (September 12, 1921), and the potatoes were seized by the plaintiff under the writ of replevin thereupon issued, Seid Pak Yuen was unquestionably in actual adverse possession of the premises and holding the same under a lease from one claiming title to the premises, and, therefore, held such possession under color of title and claim of right. The case of *Page* v. *Fowler,* 39 Cal. 415 [2 Am. Rep. 462], cited in the original opinion, and which has been sustained by all the subsequent cases in this state, is, in its general facts, quite similar to the case at bar. Indeed, we perceive no distinction between the two cases as to the general facts which justifies the conclusion that the principles upon which *Page* v. *Fowler* was decided are less applicable to this case than that. (See, also, *Rector* v. *Lewis,* 46 Cal. App. 168 [188 Pac. 1018].)

[7] 2. Further examination of the evidence since the filing of the petition for rehearing has added strength to the view, expressed in the original opinion, that the finding that the six acres upon which the potatoes were planted and grown were embraced within the exterior boundaries of the 110 acres described in the lease from Pavliger to Seid Pak Yuen cannot justly be disturbed. There was introduced

in evidence a plat or a map of the island, which shows
swamp-land surveys of numerous tracts of land embraced
within the island. Said tracts are delineated and so iden-
tified on said map by metes and bounds. Included within
the lands so delineated are the four several tracts compris-
ing the 110 acres described in said lease. The three deeds
purporting to vest in Pavliger three of the four parcels of
which the 110 acres consist and a contract of sale between
Pavliger and the purported owner of the fourth parcel pur-
porting to vest title to said parcel in Pavliger, correspond,
in the description of said parcels, to the description of the
same upon said map, as does also the lease from Pavliger
to Seid Pak Yuen. As shown in the original opinion, two
civil engineers, who had made surveys of the island, includ-
ing the 110 acres, testified that the lands leased to Seid Pak
Yuen were capable of ready identification by a reference to
the plat or map referred to. One of the engineers, Wid-
dows, stated that said map follows the description (in dis-
tances and acres) contained in the Pavliger lease to Seid
Pak Yuen as to the several parcels constituting the 110
acres claimed by Pavliger. It is true that there is no direct
or positive testimony that the six acres planted to potatoes
were embraced within the 110 acres, but, since Seid Pak
Yuen had a lease of the 110 acres, it is to be presumed that
he took possession of the leased lands and that the six acres
planted to potatoes were embraced within the lands which
under the lease he had the right to take possession of. The
burden, therefore, rested with the plaintiff to show, if it
were a fact, that the six acres were not embraced within
the 110 acres which are described in the lease from Pavliger
to Seid Pak Yuen. The plaintiff made no effort at the
trial to show that the six acres were not situated within the
exterior boundaries of the 110 acres described in the said
lease.

In conclusion, we may observe that the statement in the
petition that Seid Pak Yuen and the other Chinese who were
with him upon the premises took possession thereof by
means of force and violence is wholly without warrant in
the evidence. The only evidence in the record showing the
manner in which the defendants had possession of the prem-
ises on the eighth day of March, 1921, consisted of the
testimony of Barker, the agent of the plaintiff. The sub-

stance of all that he testified to as to his visit to the camp of the Chinese on March 8th is set forth in the original opinion; and it will be noted therefrom that all that it amounted to was that, having previously heard that the Chinese were occupying certain portions of the island, he, accompanied by a man by the name of Kelly, went to the camp of the Chinese and said to them that they had no right there and ordered them to vacate the premises; that one of the Chinese (not Seid Pak Yuen) replied in foul language, called Barker a harsh name and threatened to kill him if he did not leave the premises. It will be noticed that Barker did not even tell the Chinese that he or the plaintiff was the owner or entitled to the possession of the premises or that either claimed such ownership or right of possession. He simply ordered them away from the land.

However, for the reasons stated in the original opinion and those superadded herein, the petition for a rehearing is denied.

Burnett, J., and Finch, P. J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 3, 1923.