## CROSS v. ROBINSON*

(No. 1405; May 17, 1927; 256 P. 80.)

(Rehearing denied Aug. 16, 1927.)

ASSIGNMENTS FOR BENEFIT OF CREDITORS — REPLEVIN — NOTICE TO QUIT—TRUSTEE'S RIGHT TO CROPS—RAISING OF CROPS WITHOUT RIGHT OF POSSESSION CREATES LIABILITY FOR USE OF LAND—RE-PLEVIN IMPROPER REMEDY TO DETERMINE RIGHT OF POSSESSION TO LAND.

1. In action by trustee under trust deed for benefit of creditors to replevy crops, evidence *held* to show that assignor's possession of land on which crops were raised was up until commencement of action in good faith.

2. In action by trustee under trust deed for benefit of creditors, to replevy crops raised by assignor, letters of attorney of trustee to assignor and his tenants *held* not to constitute notice to quit entitling trustee to possession of land, but to demand reasonable value of use and occupancy of land.

3. Where trustee for the benefit of creditors claiming that he has right to the possession of land seeks to take crops raised thereon by the assignor, trustee's right to the crops should be reasonably clear.

4. One raising crops without right to possession of land is liable to the rightful owner entitled to possession for the reasonable value of the use and occupation of the premises.

5. Where defendant in possession of land in good faith planted and cultivated a crop and harvested a portion of the crop, *held* that he was the owner of the portion that he harvested as against trustee under trust deed for creditors prior to sale, even if he was not in fact entitled to possession of the land.

6. Replevin *held* not maintainable by trustee under trust deed for benefit of creditors, claiming right to possession of land, to secure mature and unharvested crops raised by debtor in possession of land in good faith and denying trustee's right to possession until trustee sold land; replevin not being proper means to determine debtor's right to possession.

*See Headnotes: (1) 5 CJ p. 1237 n. 69. (2–5) 5 CJ p. 1215 n. 71 New; 17 CJ p. 381 n. 34, 36; 39 Cyc p. 870 n. 49. (6) 34 Cyc p. 1365 n. 1.

APPEAL from District Court, Laramie County; WILLIAM A. RINER, Judge.

Replevin by Charles C. Gross against Thomas E. Robinson. From a judgment for defendant, plaintiff appeals.

*Walter Q. Phelan* and *John F. Delaney,* for appellant.

The court erred in compelling plaintiff to testify that he filed no report of his proceedings as trustee; Chapter 252 C. S. is an insolvency law, suspended by the bank-

ruptcy act; In re Weedman Stave Co., 29 Am. B. R. 460; State ex rel Court, 20 Wash. 545; 45 L. R. A. 177. Our assignment statute is an insolvency law; Hasbrouck v. La Febre, 23 Wyo. 383; In re Helcken Bros. Co. 216 Fed. 936. Parole evidence is not admissible to vary the terms of written instruments; Shipping Co. v. Insurance Co., 9 Fed. (2nd) 720. Courts cannot make contracts for parties, but are bound to give effect to the intention of the parties as expressed in writings; Transportation Co. v. Kansas City Bolt and Nut Co., 114 Fed. 77; Ry. Co. v. Bagley, 60 Kan. 424; 5 Wigmore on Evidence, Sec. 2425. The court erred in admitting the judgment in the case of Dukek v. Robinson; the parties were not identical; Fuller v. Insurance Co., 57 A. S. R. 84; Stilwell v. Carpenter, 2 Abb. N. C. 238–241; 23 Cyc. 1237; Fowler v. Stebbens, 136 Fed. 366. A judgment operates as an estoppel, only as to points litigated between the same parties; 15 R. C. L. 1012; Cook v Elmore, 27 Wyo. 163; 23 Cyc. 1155–1157. The chattel mortgage was given after commencement of suit and gave no rights in the subject-matter of the suit; 1 Freeman Judgment, p. 1148, Sec. 537; 5564; Murray v. Ballou, 1 Johns Ch. (N. Y.) 566. Defendant had no right to possession of the land and must account for its use; Jasperson v. Scharnikow, 150 Fed. 572. No title can be acquired by squatting on real estate; Harney v. Tyler, 2 Wall. 328. There was no adverse possession; 2 C. J. 50. Possession, by license, cannot ripen into title; 2 C. J. 131. Constructive possession is legal possession; 31 Cyc. 927.

*Kinkead & Ellery,* and *Donzelmann & Piggott,* for respondent.

The judgment must be sustained for the following reasons: 1. There was no evidence of the quantity or value of the grain involved. 2. Superior title to the personal property had been adjudged in another party. 3. The right of possession to land could not be adjudged

in an action involving title to crops. 4. Plaintiff's only remedy, if any, under the facts, would be for the rental value of the land. 5. Plaintiff is estopped from asserting rights to the crops. 6. Plaintiff acquired no rights as trustee under Chapter 252 C. S. The decree in the Dukek case was admissable; Need v. Mc Millan, (Ia.) 64 N. W. 438; 34 Cyc. 415. The question of lis pendens was not involved; Jenkins v. Mitchell, 59 N. W. 90; Richbourg v. Rose, (Fla.) 44 So. 69; Page v. Fowler, 39 Cal. 412; Churchill v. Ackerman, (Wash.) 60 P. 406; Woodcock v. Carlson, (Minn.) 43 N. W. 479; Groome v. Almstead, (Cal.) 35 P. 1021. Where the rightful owner of land is dispossessed, crops grown thereon by the dispossessor belong to him, subject to the payment of rental value; Cattle Co., v. Johnston, (N. D.) Ann. Cas. 1913 B, 631; Lynch v. Roller Mills, (Wash.) 90 P. 578; Fritcher v. Kelly, (Idaho) 201 P. 1036; Paik v. Chung, 211 P. 731; Power Mercantile Co. v. Moore Mercantile Co., (Mont.) 177 P. 406. An attempted assignment, without complying with the statute, is void; McCord-Brady v. Mills, 56 P. 1008. It confers no title on an assignee; Musconi v. Verchinell, (Colo.) 43 P. 912; Keith v. Hamblin, 53 P. 531; Paper Co. v. Paper Co., (Wis.) 102 N. W. 21; Knight v. Packer, 77 Am. Dec. 388; Miller v. Waite, (Neb.) 83 N. W. 355; Phillips v. Phillips, (N. D.) 204 N. W. 987. The suspension of our assignment statute was not involved in the case of Hasbrouck v. Le Febre, 23 Wyo. 367. Moreover, the general rule is that the suspension rule is invoked only in adjudicated cases; In re Bridge, 230 Fed. 184; In re Mc Elwain, 296 Fed. 112; Stellwagen v. Clum, 245 U. S. 605. Even though a title passed to the assignee, he was the agent of assignor to distribute proceeds of property to the latter's creditors.

BLUME, Chief Justice.

Charles C. Gross, plaintiff and appellant herein, brought an action in replevin against Thomas E. Robinson. A re-

delivery bond was given and the property replevied remained in defendant's possession. From a judgment upon a directed verdict for the defendant, the plaintiff appealed. The parties will be named herein as in the court below.

Plaintiff in his second amended petition claimed to be the owner of certain personal property, namely of about two hundred acres of growing wheat, containing about three thousand bushels of the value of $3,000; six stacks of harvested wheat amounting to about four hundred bushels of the value of about $400; sixty acres of growing corn of the approximate value of $300—all situated on Section 27, Township 13 North of Range 60 West in Laramie County, Wyoming. Plaintiff claimed the property by virtue of a certain trust deed dated May 19, 1922, which was executed by the said Thomas E. Robinson to the plaintiff, as trustee, for the benefit of creditors. In this instrument, Robinson assigned to Charles C. Gross, trustee, for the benefit of creditors, certain personal property and all his right, title and interest in and to certain real estate, including the real estate above described. The instrument contains, among other things, a provision that if said trustee should find an opportunity to sell the real estate, he should have the right to make such sale, the net proceeds to be distributed among the creditors of said Thomas E. Robinson. A number of defenses were interposed by the defendant in the case, which in brief, are stated as follows: First, that continuously since and prior to May 5, 1922, defendant has been and is now in actual and exclusive possession of the real estate above described, with the full knowledge and consent of plaintiff; that during each of the years 1922 to 1925 inclusive, defendant cultivated said land, sowed crops and brought them to a state of maturity, claiming and asserting his exclusive right to the possession of said land, as against plaintiff; that plaintiff, accordingly, is estopped from claiming the crops in question; second, that the trust

deed above mentioned was intended as an assignment, for the benefit of creditors, under chapter 252, W. C. S. 1920; that said trustee has failed to comply with the provisions of the statute relating to such assignments and that he, accordingly, never acquired any right or title in and to the land above mentioned; third, that an oral agreement existed between plaintiff and defendant, that plaintiff should use, occupy and cultivate the lands aforesaid until the same could be sold by the plaintiff, as trustee; fourth, that the rights of the parties herein have already been previously adjudicated in another suit.

The evidence in the case shows that plaintiff never paid the taxes on the lands above mentioned subsequent to the execution of the trust deed made to himself, but that they were always paid by the defendant. Though nobody lived on the land, since it does not seem to have contained any buildings, defendant, by himself or tenant, cultivated it during each year since the execution of the deed of trust, and put it in crops and his possession was, accordingly, visible. It is reasonably certain that plaintiff, who lived but a comparatively short distance from the land, had full knowledge of the possession of defendant, although he made some claim to the contrary. He never took actual possession of the land, and in fact, so far as the record shows, never attempted to do so. He claims, which is denied, to have told defendant in 1923 and also in 1924, to stay off the land, but he brought no action to oust defendant and judging from the letters which he caused to be sent on August 24, 1924, it would seem that all that he wanted was to get the reasonable value for the use and occupancy of the premises. These letters are as follows, written by his attorney:

"Mr. Charles C. Gross has consulted me with reference to your share of the crop, which will be harvested from different pieces of land now in the possession of certain parties who claim to hold some sort of lease or crop-sharing contract with you. As you doubtless understand,

all the revenues from these lands must be delivered over
to the trustee, to be governed by the terms of the trust
deed executed by you in 1922. I have written to the dif-
ferent tenants, advising them of the situation, and have
instructed them to make settlement only with Mr. Gross.
I hope that you will be willing to cooperate with us in
this matter, for if you do not show such a willingness, it
will be necessary for us to take appropriate court action,
by injunction or otherwise.''

And he also, on the same day, wrote to the various
tenants to the following effect:

''I understand that you have some sort of lease or
crop-sharing contract on Section 27, Township 13 North
of Range 60 West, which said land formerly belonged
to one Thomas E. Robinson and now belongs to one
Charles C. Gross, trustee. Mr. Gross, who holds title to
this land under a trust deed, executed in May, 1922, is
having some difficulty in getting Mr. Robinson to properly
account to him for the proceeds of Robinson's share of the
crops. I believe that you can be of considerable assistance
to him in this matter, and I also think that you will find
it very much to your interest to try to cooperate with
Mr. Gross. When the crop is sold, I wish that you would
do all in your power to see that Robinson does not get
possession of his share, and that his share is either deliv-
ered to Mr. Gross or is sold for the account of Mr. Gross.
If you can help in doing this, it will be of quite an assist-
ance to Mr. Gross and it will also be to your own advan-
tage, for the trust deed, having been a matter of record,
Mr. Gross is the owner of the land. And if he cannot
succeed in securing some revenue from the land, he may
find it necessary to ask the tenants to *account to him for
the reasonable value for the use and occupancy of the land.*''

The defendant claimed, and claims now, that under the
trust deed above mentioned, plaintiff had no right what-
ever to the possession of the premises, but that he simply
had the right to sell it. The crops of 1922, 1923 and
1924, were apparently poor, and did not bring much more
than enough for defendant to pay the taxes on the land.

The wheat crop of 1925 was sowed in the fall of 1924; the corn crop was planted in the spring of 1925. The wheat crop, at least, was evidently excellent, and the plaintiff sought to reach it by the action of replevin herein. Part of the crop, just how much does not appear, was put in by tenants of defendant, but they have not been made parties herein. The question of non-joinder has not, however, been raised, and we shall, for the purposes of this case, consider as correct the theory of the parties that defendant alone was in the possession of the crops at the time of the levy made thereon.

1. We shall assume for the purposes of this case, that the instrument of assignment, made for the benefit of creditors, was valid. And we shall proceed to discuss the question, who, under that assumption and in view of the remaining facts of this case, had the title to the crops replevied herein. Defendant was the owner of the lands above mentioned at the time of the execution of the trust deed, and was in possession thereof. He never gave up that possession, but cultivated the land during each year, as heretofore stated. Notwithstanding the fact that he did not live on the land, he must be held to have been in the actual possession thereof by reason of cultivating it and raising crops thereon. Gross cannot be held to have had any possession thereof. Defendant believed that he had the right to hold and occupy the land until it was sold by the trustee, and that the rights of Gross were confined to the sale thereof. Defendant paid the taxes on the land each year up to the commencement of the action herein. Plaintiff never attempted to do so. In face of these facts, it must be taken as conceded in this case, we think, that defendant's possession of the land in the meantime was in good faith, in the belief that he had the right thereto, and which was, in a sense at least, adverse to the plaintiff. The effect of the letters written on August 19, 1924, by plaintiff's attorney, is not at all

what counsel for the plaintiff claim for them. These letters did not constitute a notice to quit, and none of them demanded the surrender of the premises. On the contrary, they indicate that plaintiff merely claimed the reasonable value for the use and occupation of the land, and impliedly, accordingly, disclaimed the right to the crops on the land, and in a sense at least recognized defendant's possession. It may be true, without deciding the point, that as a matter of fact, plaintiff was entitled to possession of the land during this time, had he chosen to assert his claim. But his mere right of possession should not alone be determinative of his title to the crops, when the possession was actually held by someone else. Churchill v. Ackerman, 22 Wash. 227, 60 Pac. 406. Crops, such as those in controversy here, should not, it has been held, be considered in the same category with such constituent elements of the earth as timber, lumber or coal. Renick v. Boyd, 99 Pa. St. 555, 44 Am. Rep. 124. They are annual, are intended to be severed from the soil each year, can be produced only by labor and expense in cooperation with nature, and the rights of the plaintiff thereto should be reasonably clear in order for us to hold that he should be "permitted to enjoy the fruits of defendant's labor without paying therefor." Lewis v. Courtwright, 77 Iowa 190, 41 N. W. 615. That is particularly true in view of the fact that the rightful owner of the land, and one entitled to the possession thereof, could in any event recover the reasonable value for the use and occupation of the premises. The law as to the rights of a man who puts in a crop has undergone a gradual process of evolution, and it can hardly be said even at this time that it is fully settled, although on the whole equitable principles have found more and more application. Littleton (Coke on Littleton, sec. 68), speaking of a tenant at will and a tenant for years—and the rights of defendant herein should not be any less than that of a tenant at will—said as follows:

"Yet if the lessee soweth the land, and the lessor after it is sown and before the corn is ripe, put him out, yet the lessee shall have the corn, and shall have free entry egress and regress to cut and carry away the corn, because he knew not at what time the lessor would enter upon him.   Otherwise it is if tenant for years, which knoweth the end of his term, does sow the land and his term endeth before the corn is ripe.   In this case the lessee or he in the reversion shall have the corn, because the lessee knew the certainty of his term, and when it would end."

In the same section cited from Coke, the author holds that if ."a disseizor sow the ground and sever the corn, and the disseisee re-enter, he shall have the corn, because he entereth by a former title and severance or removing of the corn altereth not the case, for the regress is a re-continuation of the freehold in him in judgment of law from the beginning."   The leading early case so holding is Liford's case, 11 Coke 51, 77 Eng. Reprint 1206, decided in the time of Queen Elizabeth, in which, however, it was pointed out that there was considerable difference of opinion on the subject.   Some of the modern authorities appear to have adhered to the view as expressed in that case.   McCaslin v. State, 99 Ind. 428; McLean v. Bovee, 24 Wis. 295; 1 Am. Rep. 185; McGinnis v. Fernandes, 135 Ill. 69, 26 N. E. 109, 25 A. S. R. 347.   This extreme view had, however, been rejected by most of the courts. In 17 C. J. 381, it is stated as follows:

"One who sows, cultivates and harvests a crop upon the land of another is entitled to the crop as against the owner of the land, whether he came into the possession of the land lawfully or not, provided he remains in possession until the crop is harvested."

In Rector v. Lewis, 46 Cal. App. 168, 188 Pac. 1018, the court said:

"The rule applicable to crops grown and harvested upon land by a trespasser or one in unlawful possession, not under circumstances to justify exemplary damages, would seem to be that, if possession is recovered by the owner, he takes the growing crops with the land, but that crops harvested are the property of the one in unlawful possession, and the owner's remedy is to recover the rental value of his land."

And in Lynch v. Roller Mills, 51 Wash. 535, 90 Pac. 578, the court said:

"It is an elementary rule of law that the occupier of land is the owner of all crops harvested during the term of occupancy, whether the occupant be a purchaser in possession, a tenant in possession or a mere trespasser in possession holding adversely."

Whatever may be the rule as to trespassers, we have no doubt that a person in possession of land in good faith, who plants and cultivates and harvests a crop thereon, is the owner thereof. 8 R. C. L. 366; Wattenbarger v. Hall, 26 Okla. 815, 110 Pac. 911; Grossman v. Yip Wing, 62 Cal. App. 121, 216 Pac. 634; Martin v. Thompson, 62 Cal. 618; 45 Am. Rep. 663; Pennybecker v. McDougal, 46 Cal. 661; Smith v. Cunningham, 67 Cal. 262; 7 P. 679; Groome v. Almstead, 101 Cal. 425; 35 Pac. 1021; Philips v. Keysaw, 7 Okla. 674, 56 Pac. 695; Fritcher v. Kelly, 34 Idaho 468, 201 Pac. 1037; and cases cited in 17 C. J. 381, note 36. In the case at bar some of the crops were harvested, and there can be no question that under the rule aforesaid these crops belonged to the defendant and not to the plaintiff.

That leaves to be considered the crops that had not yet been harvested on the land, consisting of the growing corn and a large part of the wheat. The wheat was all mature and was being harvested at the time of the commencement of this action. Some of the courts would apparently give the matured crop the same standing as a

crop actually harvested.   Hecht v. Dettman, 56 Iowa
679, 41 A. S. R. 131, 7 N. W. 495, 10 N. W. 241; First
National Bank v. Beegle, 52 Kan. 709, 35 Pac. 814, 39 A.
S. R. 365; Wattenbarger v. Hall, supra.

The majority of courts, however, seem to hold that
one who recovers land from an adverse holder, as, for in-
stance, a successful plaintiff in ejectment, is entitled to all
the crops not yet severed from the land.   17 C. J. 381;
8 R. C. L. 366; Hartshorne v. Ingalls, 23 Okla. 535, 101
Pac. 1045, 23 L. R. A. N. S. 531 and note.   This is upon the
theory that the crops still standing on the land and affixed
to the soil are part and parcel of the land, are not per-
sonal property—though crops are personal property for
some purposes— and that the recovery of the land neces-
sarily includes such crops.   Hartshorne v. Ingalls, supra.

From what we have heretofore said, however, it would
seem, according to the weight of authority, that even a
judgment in ejectment or other ouster proceeding, does
not of itself deprive the party in adverse possession—at
least if in good faith—of all his rights, but that he is en-
titled to all the crops which he is able to harvest before
actual ouster—that is to say, while he still retains posses-
sion of the land.   Philips v. Keysaw, supra; Fritcher v.
Kelly, supra; Aultman etc. Co. v. O'Dowd, 73 Minn. 58,
75 N. W. 756, 72 A. S. R. 603; Note 39 A. L. R. 958–971,
particularly sub'd. II.   But whether that is true or not,
no ejectment or other direct ouster proceeding had been
brought in this case, and the crucial point before us is
whether an action in replevin subserves the purposes of
such an action or proceeding, or the purposes of an actual
ouster from the land.   It is clear that theoretically, at
least, it does not.   In an action in replevin, the crops are
necessarily treated as personal property, and they were
so treated herein by the plaintiff.   The levy of the writ
of replevin was on personal property.   It did not affect
the land of which the defendant had possession at the
time and of which he doubtless retained the possession

until all the crops were harvested. See Wattenbarger v. Hall, supra. If a decision on that ground should be considered too technical, however, we must still determine whether it would be just to let the claim of defendant in this case be determined by a summary proceeding in replevin, in which the sum total of the rights of the parties are fixed as of the commencement of the action. It has frequently been held that no replevin action lies where the defendant holds adversely and claims title to the land. Wells on Replevin, (2nd ed.) 75, 34 Cyc. 1365; Gunderson v. Holland, 22 N. D. 258; 133 N. W. 546, and the many cases cited; note 69 L. R. A. 732. While property sought to be replevied in the decided cases appears, in all or nearly all instances, to have been severed from the soil, the principle involved would seem to apply at least equally as much, if not more so, in cases where the property sought to be replevied consists of unsevered crops. It is said that the title to land should not be tried by a transitory action; that it would provoke much useless litigation and be attended with great practical mischief, if an owner out of possession were suffered to harass the actual occupant with an action for every blade of grass cut or bushel of grain grown by him, instead of being compelled to resort to the action for mesne profits, after recovery in ejectment, by which compensation for the whole injury might be had in one action. Powell v. Smith, 2 Watts (Pa.) 126; Renick v. Boyd, 99 Pa. St. 555, 44 Am. Rep. 124. While the title of plaintiff in the case at bar was disputed upon the trial of this case, we cannot say that it was disputed before the commencement of this action. And yet we think that the underlying principle of the foregoing cases should apply. There can be no question that the defendant in this case at all times, in good faith, disputed the right of plaintiff to possession unless and until he should sell the land. He claimed the absolute right to occupy and enjoy the land as he could until that time. The sole right which he conceded to

plaintiff was the right to sell. While, accordingly, defendant did not technically claim title, he claimed a substantial estate in the land, though that was limited. We think that upon the broad ground of justice, a right, or an estate or a claim of that character ought not to be terminated in the indirect and summary way in which it was apparently sought to be done in the case at bar. As heretofore stated, plaintiff was never given the actual possession of the land; defendant claimed it in good faith; he paid taxes on it every year; he occupied the land for several years, without being disturbed, planting and harvesting crops and cultivating the land. Ample opportunity as the plaintiff had to terminate the possession of the defendant, if he could, he did not choose to do so by means that are effectual and usual. He waited until all, or substantially all of the labor in connection with the crops in controversy had been done by the defendant or his agents, and until it appeared that the crops were large, fruitful and remunerative. To permit him to appropriate the benefit of defendant's labor and expense in the summary manner in which he has apparently sought to do so, would, we think, under the circumstances of this case, be wholly unconscionable, and it is too much to ask of this court to permit that to be done. Whether or not facts like these would create an estoppel to claim the crops at all events need not be decided. We think that it must be held that plaintiff was not entitled to the possession of the property replevied at the time of the commencement of this action.

In view of this conclusion, it is unnecessary to decide any other questions that have been raised herein. The judgment of the District Court should accordingly be affirmed, and it is so ordered.

*Affirmed.*

POTTER, J., and KIMBALL, J., concur.