[Civil No. 2854.   Filed March 24, 1930.]

[286 Pac. 186.]

R. G. CADLE, Appellant, v. E. E. HELFRICH, Appellee.

Mr. R. G. Langmade, for Appellant.

Mr. D. P. Skousen and Mr. M. L. Ollerton, for Appellee.

McALISTER, J.—The defendant, R. G. Cadle, was the owner of two mining claims in the Mineral Hill Mining District of Pinal county, Arizona, known as "January" and "New Year," and some time during 1922 he and the plaintiff, E. E. Helfrich, entered into a written contract whereby the latter agreed to furnish the former a certain sum of money to do assessment and development work on them. In compliance therewith the plaintiff advanced the defendant $275 and received from him on September 2d, 1922, a deed conveying a one-third interest in them. The agreement was executed also by a third party, one B. P. Hardy, who undertook therein to aid defendant in working on the claims for which he also was to receive from the defendant title to a one-third interest therein, but he failed to live up to his agreement and was not given a deed.

It appears that the assessment work on the claims for the year ending June 30th, 1925, was not performed and that on July 2d following one William R. Jones located the ground in his name as the "Buckingham" and "Albemarle" but for the benefit of defendant, plaintiff and himself, the understanding being that

he with the aid of defendant would do the assessment work and that each of the three would have a one-third interest therein. Notices of these locations were filed in the office of the recorder of Pinal county on July 31st, 1925, but the testimony discloses that the location work was not done, and that some time thereafter, that is, in the latter part of that year, 1925, the defendant told the plaintiff that something had to be done. "If there isn't, somebody is going to jump it; in fact, it is open now," and according to defendant the plaintiff replied, "They will have to jump it as far as I am concerned. I am done." So on July 1st, 1926, the defendant, claiming that plaintiff had theretofore abandoned any interest he had in the January and New Year, or the Buckingham and Albemarle, located in his own name the ground covered by them as Oriole No. 1 and Oriole No. 2, which on September 24th, 1927, were sold by him to one John H. Barncord for a consideration of $3,000 to be paid as follows: $250 upon execution of the contract and $250 the first of each January and July thereafter until paid. When this action was instituted $500 had been paid and at the time of trial this had grown to $1,000 but the defendant failed to pay the plaintiff any portion thereof and refused to recognize his interest therein.

The prayer of the plaintiff is that he have judgment for one-third of the $500 that had then been paid by Barncord on the purchase price of Oriole Nos. 1 and 2 and that he be declared the owner and entitled to one-third of the balance due under the contract. At the close of the evidence the court on motion of the plaintiff directed a verdict in his favor for $333.33, and it is from the judgment entered thereon that defendant appeals.

The first assignment is based upon the ruling directing a verdict for $333.33 when the amount demanded in the complaint was only $166.66, the con-

tention being that the judgment must conform to the pleadings and could not be rendered for a sum greater than that claimed in the complaint. As an abstract proposition of law this is undoubtedly correct but it is apparent that there was no violation of it in this instance. When the complaint was filed only $500 had been paid on the purchase price and, while the money demand was for one-third of this sum, the prayer in addition was that appellee be declared the owner and entitled to one-third of the balance due which, when upheld, carried with it the right to judgment for one-third of whatever the evidence disclosed had been paid up to that time as well as for what would be paid thereafter.

Appellant contends that he introduced competent testimony showing that appellee had abandoned his interest in the January and New Year claims and hence that it was error to direct a verdict in his favor. If, treating all competent testimony as true (as must be done in passing on a motion of this kind, *Arizona Binghampton Copper Co.* v. *Dickson,* 22 Ariz. 163, 44 A. L. R. 881, 195 Pac. 538), it may reasonably be deduced therefrom that it would have sustained a verdict for appellant it was error to deprive the jury of the right to arrive at and return its own verdict. The matter to be determined, therefore, is whether there was evidence in the record that would have supported a finding by the jury that appellee did abandon his interest in the January and New Year claims.

If there was such an abandonment it occurred some time after the expiration of the ninety days Jones had to perform the location work on the Buckingham and Albemarle, for the testimony of appellant is that Jones initiated these locations with the understanding that he with appellant's aid would do the work on them and that he, appellant and appellee would own them. This being true, it is clear that at least from

October 1st, 1925, the date on which this ninety-day period ended, to the day on which appellant posted location notices of the Oriole claims, July 1st, 1926, the January and New Year, notwithstanding the assessment on them had not been performed for several years, were valid, subsisting claims upon which he and appellee had the right to resume work, unless the latter had in fact abandoned his interest in them, because the locations initiated by Jones under the name of Buckingham and Albemarle were never completed and hence were without effect so far as working a forfeiture was concerned, *McKay* v. *McDougall,* 25 Mont. 258, 87 Am. St. Rep. 395, 64 Pac. 669, and no other locations of the ground were made during this period. The failure to perform the annual labor constituted neither abandonment nor forfeiture of the claims but had the effect of rendering the ground subject to location by some third party, and unless this was done the interests of appellant and appellee in the January and New Year were not affected thereby. 2 Lindley on Mines, pars. 405, 645; *Beals* v. *Cone,* 27 Colo. 473, 83 Am. St. Rep. 92, 62 Pac. 948; *McCarthy* v. *Speed,* 11 S. D. 362, 50 L. R. A. 184, 77 N. W. 590. In *Madison* v. *Octave Oil Co.,* 154 Cal. 768, 99 Pac. 176, 178, the court says:

"It is not provided that a mere failure to comply with the statutory requirement shall terminate the locator's right; the sole effect of such failure is to throw the land open to location by others, and, in the absence of such other location, the original claimant's right to resume work and to hold his claim remains."

Under these circumstances it is clear that appellant, and appellee also provided he had not abandoned it, still held his interest in the claims on July 1st, 1926, and that the relocation of the ground by him as Oriole No. 1 and Oriole No. 2 was just as much for the benefit of appellee to the extent of his

one-third interest as it would have been had he been named as one of the locators, or had appellant, instead of making new locations, resumed work on the January and New Year and performed the assessment for the year ending June 30th, 1927. As long as appellee held his interest appellant could not deprive him of it by relocating the land in his own name, since "the co-tenant," to quote the language of Costigan on Mining Law, page 331, "has no more right to take in the claim for himself by relocation than he would have to get it by buying in a tax title arising from the failure of his co-tenants and himself to pay the taxes." The only method by which he could have accomplished this was to do the annual work himself and, for the purpose of giving appellee an opportunity to contribute his part and retain his interest, advise him in the manner provided in section 2324, Revised Statutes of the United States (30 U. S. C. A., § 28), that he had done it. His failure to pay his portion within the proper time when thus notified would, of course, forfeit his interest.

To show, however, that appellee had abandoned it prior to July 1st, 1926, and could not then object to his locating Oriole Nos. 1 and 2, or claim any part of the purchase price therefor, reliance is had principally upon the testimony of appellant that when he told appellee in the fall of 1925 the land was subject to location and would be jumped if something was not done the latter said, "They will have to jump it as far as I am concerned; I am done." Appellee admits saying this in substance though he testified that he told appellant he had quit, that he was through, and stated that what he meant by this was that he was through paying money, because the terms of the contract under which he advanced the $275 did not require him to advance any more but made it the duty of appellant to develop the claims by getting out a carload of ore and selling it for

the purpose of furnishing money to continue work on the claims. It appears that he had advanced $125 for assessment and development work and a few weeks later agreed to pay an additional $150, the consideration for which was two things, viz., first, a one-third interest in the claims, and, second, an agreement on the part of appellant and B. P. Hardy "to continue work on said claims and get out a carload of ore, which is to be sold for the purpose of furnishing money to continue work on said claims. The said R. G. Cadle and B. P. Hardy are to work continuously extracting ore from said claims until such time as it is mutually agreed otherwise, and are not to look to the said E. E. Helfrich for any further finances. The said R. G. Cadle agrees to immediately convey, by deed a one-third (⅓) interest in and to the above mentioned claims to E. E. Helfrich; one-third interest in and to said claims to B. P. Hardy."

It is clear that this provision specifically relieved appellee from the obligation to advance more money and made it the duty of appellant and Hardy to get out a car of ore and sell it and work continuously extracting ore, at least, until it was agreed that they should cease. Appellant (Hardy having faded from the picture as a result of failing to earn his one-third) did neither of these things, however, and while this failure meant that the annual work was not done and that the claims again became open to location by third parties it did not imply that appellee's refusal to advance more money to prevent this from happening indicated that he intended to abandon the claims. He had not only paid for his interest but for the annual assessment thereon, at least, until it should be mutually agreed otherwise, and to say in view of this that his statement, "I am done" or "have quit," coupled with his refusal to pay again to prevent others from jumping the prop-

erty, might have been construed as establishing an intention to abandon would clearly be without justification. It may be that appellant could not carry out that part of the agreement relating to the extraction of ore, because he perhaps misjudged the extent to which he could develop the property with the money paid by appellee, but his undertaking in this respect was evidently one of the factors that induced appellee to purchase his interest and hence should form no basis for holding that his statement that he was done and would furnish no money to take care of a situation that appellant had promised to handle was evidence of abandonment by him.

The third assignment is that the court erred in holding that appellant and appellee were co-owners in the Oriole No. 1 and Oriole No. 2 and it is apparent from what has just been said that this contention is without merit. It is true, as contended by appellant, that one cotenant may abandon his interest in a mining claim without affecting the interest of the other, but we have just seen that that of appellant and appellee in the January and New Year, notwithstanding the annual labor for several years prior to July 1st, 1926, had not been performed and notwithstanding the attempted locations of the Buckingham and Albemarle by Jones, had been neither forfeited nor abandoned when the Oriole claims were initiated, and such being the case it follows under the doctrine governing the relocation of claims by a cotenant that appellant was acting just as much for appellee to the extent of his interest as for himself when locating the Oriole claims and hence that appellee is entitled to one-third of the purchase price for which these claims were sold to Barncord.

The judgment, therefore, is affirmed.

LOCKWOOD, C. J., and ROSS, J., concur.