[Civil No. 3064. Filed November 4, 1931.]

[4 Pac. (2d) 386.]

CHARLES LAZEAR, Appellant, v. P. P. PENDERGRASS and MABEL PENDERGRASS, His Wife, MAX LUKE and JOHN LUKE, Her Husband, Appellees.

Messrs. McNabb & De Camp, for Appellant.

Mr. Thorwald Larson, Mr. Henderson Stockton and Mr. Thomas A. Flynn, for Appellees.

ROSS, J.—This is an action in conversion for the value of a cotton crop grown on the premises of defendants Pendergrass during the year 1928 by plaintiff Lazear.

After plaintiff had closed his case, the court granted defendants' motion for a directed verdict, and, from such order, plaintiff has appealed.

The complaint, in substance, alleges that prior to March 23, 1928, defendants Pendergrass were negotiating the sale of the premises to one Ella Stevens, and, during such negotiations, authorized such prospective buyer to lease the premises so that they could be cultivated during the year 1928, and that defendant P. P. Pendergrass authorized the agent of said Ella Stevens to lease said land on such terms as he was leasing other lands, or on such terms as he could secure; that, in pursuance of such authority, he did lease the land to E. B. Holder, L. B. Holder and plaintiff, and included the same in a lease from Edwin Roland and Alma Roland of certain of their lands to the Holders and plaintiff; that the terms and conditions of the lease were that the lessee should take possession of the land, clear, level and plant the same to cotton; the lessees to pay for seed and water, the expense of picking the cotton crop to be borne equally, and thereafter the crop equally divided, the lessors agreeing to repay lessees all expense of water and seed and to pay them $5 per acre for clearing and leveling the land.

That the Holders quit and relinquished to plaintiff all of their interest in lease, and plaintiff cleared and leveled the land, planted it to cotton, and cultivated same during the year 1928.

That the sale of the land to Ella Stevens was not consummated.

That in October, 1928, defendants P. P. Pendergrass and John Luke forcibly took possession of the premises and appropriated the cotton crop to their own use, to plaintiff's damage in the sum of $3,500, the value of the cotton.

Defendants' answer was a denial of all of the allegations of the complaint.

The court granted the motion for a directed verdict, stating: ''I am satisfied that the plaintiff hasn't made out the case as set up in the complaint.'' The motion was granted, therefore, on the grounds of variance of allegations and proof, or for failure of proof. Such ruling did not question the sufficiency of the complaint to state a cause of action. If therefore the complaint states a cause of action, and we think it does, and the evidence, considered in its most favorable light, supports such cause, it was error to take the case from the jury.

The motion for directed verdict does not question the sufficiency of the pleadings, but raises merely the question of the legal sufficiency of the evidence to sustain a verdict against the moving party. *Kroeger* v. *Twin Buttes R. Co.,* 14 Ariz. 269, Ann. Cas. 1914A 1289, 127 Pac. 735. It is also the rule that a motion for a directed verdict admits the truth of whatever competent evidence the opposing party has introduced, viewed in the strongest light against the movant. *Arizona Binghampton Copper Co.* v. *Dickson,* 22 Ariz. 163, 44 A. L. R. 881, 195 Pac. 538; *Arizona Power Co.* v. *Hayes,* 24 Ariz. 322, 209 Pac. 280; *Southwest Cotton Co.* v. *Pope,* 25 Ariz. 364, 218

Pac. 152; *Cadle* v. *Helfrich,* 36 Ariz. 390, 286 Pac. 186.

We have carefully read the evidence, and find that it supports in a very substantial way all the material allegations of the complaint. One feature thereof given by defendant P. P. Pendergrass, who was called by the plaintiff for cross-examination, was to the effect that in May, 1928, he had a conversation with Mr. Holder (one of the lessees), who informed him that Mr. Stevens (the agent of Ella Stevens) had told him to go ahead and clear the land and work it; that he was the owner of it; that they were working it on shares; and that Stevens was to pay them $5 per acre for clearing the land. He said that at or near that time he prepared a lease for the Holders and the plaintiff to sign, in which it was agreed that the cotton grown should be divided equally, the owners of the land to pay $5 per acre for clearing and leveling, and one-half the picking and ginning expenses, and for the water and seed. He also said:

"Mr. Holder come up to town and we fixed up the contract and we paid him $125.00 on this clearing the land and afterwards we took the contract down, we agreed to make the contract and he recognized us as the owners."

It was also shown that defendant P. P. Pendergrass had, in the fall of 1927, sold, or agreed in writing to sell, the premises to Ella Stevens for a valuable consideration and had accepted a down payment thereon of $100; that the purchaser was ready, willing and able to consummate the sale upon the tender to her of a good and sufficient deed, clear of encumbrances; that P. P. Pendergrass had authorized her or her agent to do with the premises as she pleased pending the consummation of the sale; that her agent, acting for her in pursuance of such authority, had leased the premises to the Holders and plaintiff in

the name of Edwin Roland and Alma Roland as lessors.

Under the evidence, it is apparent that the Rolands were only nominal lessors. They had no interest except as bare trustees for the real owner of the land, who, if the sale had been consummated, would have been Ella Stevens, and, if not effected, Pendergrass.

It is also shown that in May, 1928, Lazear refused to sign a lease to Pendergrass, but said he would attorn to the legal owner of the premises when the time for division of the crop arrived.

From the above facts, it is clear plaintiff was not a trespasser. On the contrary, with the tacit consent of the defendants, he had in good faith gone upon the land, cleared, leveled and planted it to cotton, and cultivated the cotton to maturity. Not only that, but defendants paid plaintiff, or his partner Holder, $125 on account of the clearing and leveling of the land.

Under the facts, we think it immaterial as to where the title to the land laid. Plaintiff was not a trespasser. He went into possession in good faith under what may be admitted to be a void lease under the statute of frauds, but a lease nevertheless, tacitly consented to by Pendergrass in the verbal authorization to Ella Stevens to do with the land as she pleased; and also ratified later on by paying in part performance of its terms part of the cost of clearing and leveling the land. Under such state of facts, the ownership of the land is immaterial. *Grossman* v. *Yip Wing*, 62 Cal. App. 121, 216 Pac. 634.

As was said in *California Delta Farms* v. *Chinese American Farms*, 204 Cal. 524, 269 Pac. 443:

"We are not concerned with the question of growing crops produced by a trespasser, and not severed on the entry of the true owner."

If plaintiff and the Holders may be considered trespassers when they originally entered upon the land, they no longer remained such after the defend-

ant recognized their possession by paying them for leveling and clearing the land.

The majority rule, as stated in 17 Corpus Juris 381, section 7, and 8 Ruling Case Law 366, section 11, to the effect that "one who recovers land from an adverse holder, as, for instance, a successful plaintiff in ejectment, is entitled to all the crops not yet severed from the land" (*Gross* v. *Robinson*, 36 Wyo. 392, 57 A. L. R. 578, 256 Pac. 80), has no application to the facts of this case. Rather, the rule applicable here is the one stated in 17 Corpus Juris 382, section 8, as follows:

"One in possession of land with the owner's consent is entitled to the crop which he has raised and harvested. And one who enters upon the lands of another and puts in crops under a parol license and a parol agreement that he shall have the crops which he raises is entitled to the crops."

The defendants, of course, should plaintiff prove his case on a new trial, are entitled to compensation for the use of the land in growing cotton crop; the amount thereof to be determined by an accounting.

Defendants contend the assignments of error do not question the court's ruling on the ground that the evidence submitted fully supported the allegations of the complaint. We think when the assignments are liberally construed that is their effect.

We wish to say, however, counsel for appellant are guilty of making sweeping statements in their briefs as to what the evidence shows without taking the least pains to quote such evidence or indicate where in the record it can be found. This is not conforming with the court's rules, made to be observed and not ignored.

The judgment is reversed and the cause remanded, with directions that a new trial be granted in accordance herewith.

McALISTER, C. J., and LOCKWOOD, J., concur.