[Civil No. 3094.   Filed December 14, 1931.]

[6 Pac. (2d) 47.]

FIDELITY-PHENIX FIRE INSURANCE COMPANY, a Corporation, Appellant, v. I. L. GARRISON and D. E. SMITH, Who Sues for the Benefit of I. L. GARRISON, Appellees.

Messrs. Stockton & Perry, Mr. E. G. Frazier, Mr. Stanley A. Jerman and Mr. Thomas P. Riordan, for Appellant.

Mr. John W. Ray, for Appellees.

ROSS, J.—This action was brought by D. E. Smith and I. L. Garrison to recover on an insurance policy issued on February 14, 1930, by the defendant Fidelity-Phenix Fire Insurance Company to D. E. Smith, with the provision attached thereto that loss or damage, if any, should be paid to I. L. Garrison, mortgagee, as his interests might appear. It was a standard New York policy, and the rider attached thereto was the standard "union mortgage clause."

The property was described in the mortgage and policy as a one-story, shingle roof, brick building, located on the extreme southwest corner of section ——, in township 1 North, Range 3 East, Maricopa county, Arizona, whereas in fact it was located on the W. $\frac{1}{2}$ of the S. W. $\frac{1}{4}$ of the S. E. $\frac{1}{4}$ of section 30, said township and range.

At the time the policy was issued, there were two mortgages against the property, one to Thomas Welsh for $3,000, overdue, and one to Beatrice B. Formsby for $5,000, and the latter was being foreclosed.

Smith had obtained a policy or policies in other insurance companies providing that loss or damage, if any, was payable to Welsh, as his interests might appear, which policy or policies were in effect on February 14, 1930, the date of the issuance of the present policy. There was evidence that the insured, Smith, represented to the agent of the defendant that the Garrison mortgage for $2,000 was a first mortgage. The policy so recited. March 8, 1930, the building insured was destroyed by fire.

The defendant's defense is that plaintiffs had failed to disclose to defendant the existence of the Welsh and Formsby mortgages, or the policy of insurance on the property in favor of Welsh, or that the Formsby mortgage was in the course of foreclosure, thereby concealing from defendant material facts. Also that plaintiff Garrison did not have an insurable interest in the premises and did not have a mortgage lien thereon; that said mortgage lien was simulated for the purpose of defrauding defendant; that defendant relied upon plaintiffs' representations as to unencumbered title and the *bona fides* of mortgage to Garrison and issued the policy; that the mortgaged property was not worth to exceed the Welsh and Formsby mortgages. It is alleged that, in further pursuance of the plaintiffs' conspiracy to defraud

defendant, the plaintiff Smith, on March 8, 1930, caused the insured building to be destroyed by fire, and thereafter plaintiffs fraudulently presented proof of loss and demanded of defendant the sum of $1,700 the face of the policy. In other words, the defense is that plaintiff Smith did not owe plaintiff Garrison; that the mortgage insured against was simulated; that the defendant was deceived by plaintiffs into believing that there were no other encumbrances on the property; that Garrison participated in this deceit and assisted in obtaining the policy and that thereafter plaintiff Smith burned the property to carry out the conspiracy and to defraud defendant.

At the close of the case, both plaintiffs and defendant moved for an instructed verdict, and plaintiffs' motion was granted. The verdict was for $1,771.40, the face value of the policy and interest from date of filing complaint, plus statutory penalty of 15 per cent., or $255. Judgment was entered for such sums, and $250 attorneys' fees.

The defendant has appealed, and, for reasons, assigns several errors. We shall largely confine ourselves to determining if under the state of the evidence the court was right in directing a verdict for the plaintiffs.

The defendant's answer and its evidence in support thereof were directed in part to proving that the insured, Smith, had concealed certain material facts in order to obtain the policy, and that Garrison, the mortgagee, was cognizant of such concealment of facts and affected thereby. Before we inquire into the soundness of defendant's position, we state the rule that should guide the court in passing on a motion for a directed verdict to be that the evidence is to be taken in its strongest light against the movant. The party against whom the motion is directed is entitled to the benefit of every inference that

might justifiably be drawn from the evidence, and it is only when all the evidence with all such inferences is insufficient to support a verdict in his favor that the court may direct a verdict against him. *Stanfield* v. *Anderson,* 5 Ariz. 1, 43 Pac. 221; *Root* v. *Fay,* 5 Ariz. 19, 43 Pac. 527; *Roberts* v. *Smith,* 5 Ariz. 368, 52 Pac. 1120; *Haff* v. *Adams,* 6 Ariz. 395, 59 Pac. 111; *Haupt* v. *Maricopa County,* 8 Ariz. 102, 68 Pac. 525; *White Sewing-Machine Co.* v. *Bradley,* 16 Ariz. 338, 145 Pac. 725; *Arizona Binghampton Copper Co.* v. *Dickson,* 22 Ariz. 163, 44 A. L. R. 881, 195 Pac. 538; *Hines* v. *Gale,* 25 Ariz. 65, 213 Pac. 395; *Smith* v. *Elder,* 30 Ariz. 144, 245 Pac. 274; *Cadle* v. *Helfrich,* 36 Ariz. 390, 286 Pac. 186; *Lazear* v. *Pendergrass et al., ante,* p. 111, 4 Pac. (2d) 386.

The trial court took the view, and we think very correctly, that the insertion contained in the policy commonly referred to as the "union mortgage clause" created a new relation between the insurer and the mortgagee, namely, that of insurer and insured, independent of the contract with the mortgagor. As is said in *Federal Land Bank* v. *Globe & Rutgers Fire Ins. Co.,* 187 N. C. 97, 121 S. E. 37:

"With respect to the rights of the mortgagee under the standard mortgage clause, it is the generally accepted position that this clause operates as a separate and distinct insurance of the mortgagee's interest, to the extent, at least, of not being invalidated by any act or omission on the part of the owner or mortgagor, unknown to the mortgagee, and, according to the clear weight of authority, this affords protection against previous acts as well as subsequent acts of the assured. *Hastings* v. *Westchester Fire Ins. Co.,* 73 N. Y. 141; *Smith* v. *Union Ins. Co.,* 25 R. I. 260, 55 Atl. 715, 105 Am. St. Rep. 882; *Gilman* v. *Com. Ins. Co.,* 112 Me. 528, 92 Atl. 721, L. R. A. 1915C 758, and note; *Brecht* v. *Law Union & Crown Ins. Co.,* 160 Fed. 399, 87 C. C. A. 351, 18 L. R. A. (N. S.) 197, and note; *Germania Fire Ins. Co.* v. *Bally,*

19 Ariz. 580, 173 Pac. 1052, 1 A. L. R. 488; 14 R. C. L. 1085.''

In the Germania case *supra,* we said:

''We think the mortgagee, when a policy is presented to him with a standard mortgage clause attached thereto in his favor, is justified in assuming that the insurance company has satisfied itself that the policy is valid and free from impeachment for any conduct or act of the assured at its inception or prior to the attachment of the mortgage clause. The authorities are not agreed on this proposition, but we think the better reason is with those that hold the rights of the mortgagee are unaffected by any act or neglect of the insured as well before the attachment of the mortgage clause as afterward.''

This rule does not mean, however, that the mortgagee may himself participate in the *act* or *neglect* of the insured, or take no notice or concern himself if he knows of it. The mortgagee's rights and position are well defined in *Union Trust Co.* v. *Philadelphia Fire & Marine Ins. Co.,* 127 Me. 528, 145 Atl. 243, as follows:

''But in reason and based on the authorities, a mortgagee under such a clause [union mortgage clause] is protected only where the act or neglect of the mortgagor or owner is unknown to him. *Eddy* v. *L. A. Corp.,* 143 N. Y. 311, 324, 38 N. E. 307, 25 L. R. A. 686; *Syndicate Ins. Co.* v. *Bohn,* (C. C. A.) *supra,* 65 Fed. 165, 177, 27 L. R. A. 614; *Genesee Falls P. Sav. & L. Assn.* v. *United States Fire Ins. Co.,* 16 App. Div. 587, 44 N. Y. Supp. 979, 981; Cooley's Briefs on Insurance, 2d ed., p. 2391. If he has actual knowledge of any act or neglect that would invalidate the policy, or such knowledge of facts as would induce a man of ordinary prudence to make further inquiries, which would have disclosed acts or neglect by the mortgagor that would void the policy either at its inception or afterward, then the provisions of the 'union mortgage clause' will not protect him. He is in such cases chargeable with knowledge of all facts which by the exercise of reasonable diligence he

would have ascertained. The means of knowledge under such circumstances are the same as knowledge itself. *Knapp* v. *Bailey,* 79 Me. 195, 204, 9 Atl. 122, 1 Am. St. Rep. 295; *Morey* v. *Milliken,* 86 Me. 464, 475, 30 Atl. 102; *Coleman* v. *Dunton,* 99 Me. 121, 58 Atl. 430; *Hudson Structural Steel Co.* v. *Smith & Rumery Co.,* 110 Me. 123, 85 Atl. 384, 43 L. R. A. (N. S.) 654.''

In addition to the facts already stated, there was evidence showing that Smith and Doctor Garrison were very close personal friends, and had been since 1924. Garrison was Smith's family physician, and, at frequent intervals, had helped him financially by lending him money in amounts of five, ten, fifty or more dollars, taking as evidence thereof only I. O. U.'s. These loans, on January 31, 1930, it appears, amounted to the sum of. $2,000. On that date, Smith made to Garrison his note and secured the same by mortgage on premises, in which he covenanted to keep the property insured to protect the mortgage lien. The policy sued on was issued February 14th.

It quite conclusively appears from the circumstances and his admissions that Doctor Garrison knew of the Welsh and Formsby mortgages, and also that the Formsby mortgage was being foreclosed at the very time the policy was issued insuring his mortgage interest. About the middle of February, Smith and Doctor Garrison went together to see if Welsh would sell his mortgage to Garrison. Doctor Garrison said that he had frequently talked with Smith about the Formsby mortgage, and all the facts and circumstances indicate that he knew this mortgage was being foreclosed, although he denies it. Garrison claimed he was negotiating to buy the property from Smith and that he was trying to buy the Welsh mortgage as a first step in that direction. If that be true, he certainly had advised himself of the Formsby mortgage and its present condition.

There was evidence that the value of the mortgaged premises, including the burned house and another small dwelling and the land on which they were situated, did not exceed $8,000. The Welsh and Formsby mortgages and interest exceeded that amount. Before the Garrison mortgage could be realized, the other two had to be satisfied, one of which had been foreclosed, and under which foreclosure the property was about to be sold, and the other of which was overdue. Under such circumstances, it was apparent the only way for Smith to pay Doctor Garrison was to have the property burned and collect the insurance. This was obvious to anyone familiar with the facts. A provision of the policy is that it shall be void if the insured has concealed or misrepresented any material fact or circumstance concerning the insured or the subject thereof, or if foreclosure proceedings be commenced.

We think under the evidence that if the case had been submitted to a jury, and a verdict had been returned in favor of defendant, such verdict would not have been vacated or set aside for lack of evidence to support it. It was error to direct the verdict.

The questions of Doctor Garrison's knowledge and the materiality of the concealment from defendant of the Welsh and Formsby mortgages and the foreclosure proceeding should have been submitted to the jury.

The policy described the property insured as being located in the southwest quarter of the section, whereas in fact the property intended to be insured was located in the southwest quarter of the southeast quarter of said section. The court permitted plaintiffs, although they had not asked that the instruments (policy and mortgage) be reformed, to show the correct description; to introduce evidence of the correct location of the · property in-

tended to be insured. Defendant complains of this as error. Defendant, however, admitted in its answer that the property intended to be insured was in the southwest quarter of the southeast quarter of the section. Under this admission, we do not think the evidence was objectionable.

The defendant offered evidence showing, or tending to show, that plaintiff Smith had himself burned or caused the dwelling to be burned. Defendant complains of the court's refusal to permit the introduction of this evidence. If as a matter of fact Smith did set the house on fire, he should not be permitted to profit thereby. After the fire, on April 24, 1930, Smith, according to the undisputed testimony, bought from Ed Rudolph, the Ford agent in Phoenix, a Ford automobile and paid thereon $800 with an assignment from Dr. Garrison of that amount of the insurance carried by defendant on the burned property. Doctor Garrison admitted he did not ask for or take from Smith any security for such assignment. In that connection, he was asked this question:

"And when your deposition was taken you told us this, didn't you, that 'I didn't have anything to do with the insurance company that I remember about; I didn't even ask for this security; I didn't even ask for the mortgage, and I don't care anything about it now; D. E. Smith will pay me' "—to which he made answer as follows: "I said something to that effect, yes, sir; but he insured me just the same."

The assignment recites a consideration of one dollar only; and that, so far as his evidence is concerned, is all that Doctor Garrison was to get for the assignment. He does not state that it was a loan to be repaid. Of course if the policy was valid, Doctor Garrison could dispose of his claim against defendant as he pleased. He could give all of it, or any part of it, to plaintiff Smith if he so chose, and defendant would have no legal right to complain. But such a

generous division of the insurance between the insured and the mortgagee can hardly be reconciled, except upon the basis that the insured was expected to share in the insurance in the event the property was destroyed by fire. It seems to us that because of this situation, and all the other circumstances surrounding the taking out of the policy, the evidence should have been admitted.

Since the case must be reversed on the grounds above stated, and a new trial granted, we do not deem it necessary to pass on the other assignments of error.

Cause reversed and new trial ordered.

McALISTER, C. J., and LOCKWOOD, J., concur.