724 P.2d 607

**George STIKA dba George Stika Realty, Plaintiff-Appellee,**

v.

**Arthur L. ALBION and Margaret L. Albion, his wife, Defendants-Appellants.**

**No. 1 CA–CIV 8548.**

Court of Appeals of Arizona, Division 1, Department C.

July 22, 1986.

Tupper, Schlosser, Schulz & Spaw, P.A. by Peter S. Spaw, Phoenix, for plaintiff-appellee.

Karasek, Haddy & Rayes by David J. Karasek, Phoenix, for defendants-appellants.

## OPINION

PAUL G. ULRICH, Judge Pro Tem.

Appellants Arthur L. Albion (Albion) and Margaret L. Albion appeal from a judgment following a trial to the court awarding appellee George Stika, dba George Sti-

ka Realty (Stika), a real estate commission pursuant to an "extension clause" in a listing agreement between the parties. We find the evidence and the agreements involved do not support the trial court's judgment and therefore reverse.

The relevant facts and agreements are undisputed. On May 29, 1982, Albion signed an open listing agreement with Stika for the sale of a cocktail lounge business. Stika's commission was to be any amount offered over $65,000 or 12%, whichever was greater. The business consisted of a number 6 liquor license, furniture and equipment. The listing agreement also provided for a 15–year lease on the building from Albion at $2,400 per month. The agreement thus did not relate exclusively to purchasing the liquor license, furniture and equipment. Instead, purchasing these items was to be part of a larger transaction including leasing the building as it then stood. Nothing in the listing agreement suggests purchasing the business assets could occur separate and apart from leasing the building as well.

When the listing agreement was entered into, the building was in a run down, dilapidated condition. The business was also closed and had not been operated for several months. During the listing period, Stika showed the business to one Elaine Collis. Collis, the ultimate purchaser, was totally uninterested in buying the property when she first saw it in June, 1982 because of the "mess" the building was then in. Although she testified the price at the time was "very reasonable to get in," she was not interested in acquiring the property since it would "take a lot to get it in working order." She further testified she "couldn't handle" the monthly rental payment at that time.

After expiration of the listing agreement, Albion remodeled the interior and made improvements to the building. He then advertised the business for sale along with the real estate. Collis thereafter saw the property again in November 1982. She decided to buy it at that time because of the opportunity to purchase the land and

because "the bar was improved so much." At that time, workmen were still "remodeling it over," but it "looked very nice." In Collis' opinion, the business "went from total disaster to total improvement." She also testified that because the land was also for sale it completely changed her opinion of the business. She and her partner therefore purchased both the land and the business assets from Albion for $300,000, $210,000 of which was allocated for the land and building and $90,000 for the business assets. Albion testified the $90,000 figure was determined as a result of the improvements he had made. Collis confirmed the allocation was made by the seller.

When Stika learned of the sale, he sued to recover a real estate commission of $25,000 pursuant to a one-year extension clause in the listing agreement which provides in part:

> Owner agrees that if the property is sold ... within one (1) year from the termination date of this agreement to any person referred to the business by the Broker or with whom negotiations began during the listing period, Owner shall pay the commission to the Broker.

The trial court rejected appellants' contention that Albion and Stika intended to market and sell the business in an "as is" condition, that the listing price in May 1982 was indicative of the condition at that time, and that substantial improvements were made to the business and business premises thereafter that made it saleable at a higher price. Instead, the trial court found any improvements Albion made were not to the business assets themselves, so that the business Collis was shown by Stika was substantially the same as the one she later purchased. The court further found Stika was entitled to a $25,000 commission pursuant to the listing agreement's extension clause.

This court is free to substitute its analysis of the record for the trial court's where the case turns upon the interpretation to be applied to undisputed facts. *Goodyear Aircraft Corp. v. Arizona State*

*Tax Comm'n,* 1 Ariz.App. 302, 402 P.2d 423 (1965). Interpretation of legal instruments is also a question of law to be determined by this court independent of the trial court's findings. *LeBaron v. Crismon,* 100 Ariz. 206, 412 P.2d 705 (1966).

Applying this standard of review, we believe the trial court focused its attention too narrowly when it considered solely the business assets portions of the listing agreement and the ultimate sale transaction, respectively. According to *Smith v. Melson, Inc.,* 135 Ariz. 119, 121–22, 659 P.2d 1264, 1266–67 (1983), "a contract should be read in light of the parties' intentions as reflected by their language and in view of all the circumstances.... [T]he purpose of an agreement is to be divined from the entire instrument and the surrounding circumstances and not from the label the parties attach to it." *Accord, Darner Motor Sales, Inc. v. Universal Underwriters Ins. Co.,* 140 Ariz. 383, 393, 682 P.2d 388, 398 (1984), *see generally, Restatement (Second) of Contracts* § 212 (1981); 3 Corbin, *Contracts* § 535, at 19–20 (1960).

Among the surrounding circumstances existing when the listing agreement here involved was entered into was the fact that the building to be leased was then in a run down, dilapidated condition. A fair reading of Collis' testimony requires the conclusion that she did not initially go forward with the transaction because of her problems with the building as it then stood and the required monthly rental payment. She thus obviously believed leasing the building as it then stood was required in addition to purchasing the business assets themselves.

We also do not believe the sale of the liquor license and business assets can fairly be severed from the related lease or purchase of the building and underlying land. Originally, the business property and 15-year lease on the building were both referred to in the listing agreement. It is clear from Collis' testimony she decided to purchase the business following her second visit five months later because she then had an opportunity to buy the building and underlying real property outright, and because the building's condition had improved considerably.

Under these circumstances, we believe the listing agreement was not severable with respect to the business assets to be sold for $65,000. Instead, it was a part of an indivisible larger transaction which also required leasing a dilapidated building for a 15-year period. Correspondingly, the later transaction between Collis and Albion to purchase the business assets for $90,000 was a nonseverable portion of an entire agreement also to purchase the land and a considerably improved building for a total price of $300,000. Collis testified she would not have concluded the transaction but for those improvements.

■ Whether a contract is entire or severable is a question of intention to be determined by language the parties have used and the subject matter of their agreement. A contract may be both in its nature and by its terms severable, and yet be rendered entire by the parties' intention. *Temp-Rite Eng'g Co. v. Chesin Const. Co.,* 91 Ariz. 360, 372 P.2d 701 (1962); *Waddell v. White,* 51 Ariz. 526, 78 P.2d 490 (1938); *O'Malley Inv. and Realty Co. v. Trimble,* 5 Ariz.App. 10, 422 P.2d 740 (1967).

■ Here, we do not believe there is any dispute that the parties considered the purchase of the business assets and the lease or purchase of the building and underlying real property, respectively, to be part of the same transaction. By the time of the ultimate purchase transaction, the surrounding circumstances and the terms of the contract concerning the building had substantially changed from those contemplated by the original listing agreement. The extension clause was thus no longer applicable, even though the business assets themselves may have been virtually identical. We therefore hold Stika was not entitled to a commission under these circumstances, since the terms of the eventual purchase of the business assets, land and building materially differed from the terms originally set forth in the listing agreement. *E.g., Bishop v. Norell,* 88 Ariz. 148,

353 P.2d 1022 (1960); *Heurich v. Sullivan,* 281 Fed. 599 (D.C.Cir.1922).

The superior court's judgment is reversed, with direction to enter judgment in favor of appellants. *E.g., Crouch v. Truman,* 84 Ariz. 360, 328 P.2d 614 (1958); *Shetter v. Rochelle,* 2 Ariz.App. 607, 411 P.2d 45 (1966). Appellants are also entitled to consideration for an award of attorney's fees by the trial court pursuant to A.R.S. § 12–341.01, since such fees were requested in their answer to Stika's complaint. However, since appellants have not requested an award of attorneys' fees on appeal as required by ARCAP 21(c)(1), we are unable to authorize application for such an award as a part of our decision.

Reversed and remanded.

CONTRERAS, P.J., and GRANT, J., concur.

PAUL G. ULRICH was authorized to participate in this case by the Chief Justice of the Arizona Supreme Court pursuant to Ariz. Const. Art. VI, § 3 and A.R.S. §§ 12–145–47.