836 P.2d 425

The **VALLEY NATIONAL BANK OF ARIZONA, a national banking association, Curt M. Kinshella, d/b/a Wholesale Building Materials, Inc., Wholesale Building Materials, Inc., an Arizona corporation, Plaintiffs–Appellants,**

v.

**INSURANCE COMPANY OF NORTH AMERICA, a foreign corporation, Defendant–Appellee.**

No. 1 CA–CV 89–578.

Court of Appeals of Arizona, Division 1, Department E.

March 3, 1992.

Reconsideration Denied April 21, 1992.

Review Denied Sept. 22, 1992.

---

Gust, Rosenfeld & Henderson by Fred Cole and Steven E. Harrison, Phoenix, for plaintiff-appellant Valley Nat. Bank of Arizona.

Holloway & Thomas, P.C. by Benjamin C. Thomas and Thomas P. Burke, II, Phoenix, for defendant-appellee.

## OPINION

CLABORNE, Presiding Judge.

The issue in this case is whether there was an effective cancellation of a property casualty insurance policy issued by Insurance Company of North America ("INA") involving the interest of Valley National Bank of Arizona ("VNB") as mortgagee payee. We hold there was not, and reverse.

VNB filed a declaratory judgment action claiming that it was entitled to payment from INA for losses to VNB's interest as the mortgagee of property of Wholesale Building Materials, Inc. ("WBM") which was damaged by a fire. INA's defense was that it had canceled the policy because of WBM's failure to pay the required premiums. The trial court, after hearing evidence and reviewing stipulated facts, found in favor of INA.

■ The facts which control this action are straight forward and are really not in dispute.[1] INA issued its policy of insurance which dealt with fire protection to WBM, and VNB was named as a mortgagee payee. A notice of cancellation for nonpayment of premiums was sent to WBM on May 28, 1985, and it indicated that the effective date of the cancellation was June 10, 1985. A copy of this notice was re-

---

1. The dissent's claim that VNB was somehow misled was never raised in the court below. Even if this was the thrust of this case, which it is not, the issue could be raised here.

We must remember that for more than forty years Arizona has recognized that

... when the record in a case on appeal shows affirmatively that certain facts exist sufficient to determine an issue which though not specifically presented and tried out in the lower court is necessarily decisive of the action, we will consider and determine the ap-

peal upon that issue, notwithstanding it was never formally raised or litigated in the lower court.

*International Life Ins. Co. v. Sorteberg*, 70 Ariz. 92, 98, 216 P.2d 702, 706 (1950). *Accord Rubens v. Costello*, 75 Ariz. 5, 8, 251 P.2d 306, 307 (1952); *Brown v. Arizona Pub. Serv. Co.*, 164 Ariz. 4, 6, 790 P.2d 290, 292 (App.1990).

The facts upon which the trial court relied were, as the dissent points out, by stipulation and therefore undisputed.

ceived by VNB.[2] On July 3, 1985, a fire occurred damaging the insured property. VNB made a demand for payment of its mortgagee interest which was damaged by the fire. INA refused this demand. The declaratory action was filed and ruled upon in favor of INA, and this timely appeal followed.

The policy upon which the position of each party was based reads in pertinent part:

MORTGAGEE AND TRUSTEE INTEREST

If there is a loss to any real property covered under YOUR PROPERTY COVERAGE, we will pay any mortgagee or trustee named in the Declarations up to his, her, or its interest in that property. This provision will apply to all present or future mortgages in the order of precedence of these mortgages.

*Regarding the interest of any mortgagee or trustee designated in the Declarations, this insurance will not be invalidated by any of the following:*

—*any act or neglect by any mortgagor or owner of the property;*

—*foreclosure or other proceedings, or notice of sale relating to the property;*

—*change in the title or ownership of the property; or*

—*occupation of the premises for purposes more hazardous than existed when this insurance took effect.*

The mortgagee or trustee must notify us of any change of ownership or occupancy, or of any increase in hazard which he, she or it learns about. If we require, the policy will be amended to reflect this change. *If you fail to pay any premium due because of an increase in hazard, the mortgagee or trustee must pay this premium.*

*And if you fail to pay any premium due under this policy, we have a right to collect the premium from the mortgagee or trustee.* (Emphasis added.)

It seems clear that "you" means the insured and not the mortgagee.

The only language in the policy discussing cancellation of the policy by the insurer provides as follows:

Our Cancellation

*We can cancel the policy by sending to you, at the address shown in the Declarations, notice of the effective date of cancellation. We must do this at least 45 days prior to the cancellation date unless we are cancelling [sic] the policy because you failed to pay your premiums. In that case we will give you only 10 days' notice. Mailing or delivery of the notice will be proof that you were informed of the cancellation. We will also notify any mortgagee shown in the Declarations.* (Emphasis added.)

We will then refund any unearned portion of the premium you paid, on a *pro rata* basis.

We may refund the unearned premium at the time of cancellation or as soon as reasonably possible after the cancellation. However, regardless of when you receive the refund, the cancellation of the policy will take effect as provided above.

There is no indication that VNB had any communication with INA concerning cancellation other than its receiving a copy of the notice.

The trial court found that the policy had been effectively canceled before the loss. Based on the arguments presented, the trial court must have reasoned that VNB was not entitled to forty-five days notice before effective cancellation because the clause in the policy indicated that if the reason for cancellation was non-payment of premium, only ten days notice was required. The trial court rejected the bank's position that the ten-day notice only applied to the insured and not the mortgagee payee, and that the normal forty-five-day notice provided in the same paragraph applied to it.[3]

---

2. We have included the actual notice to indicate that the notice did not provide VNB with any indication that *its* interest was affected by the cancellation. See Appendix A.

3. The parties have stipulated that VNB was a mortgagee payee for the real property covered by the policy and a loss payee for certain personal property. VNB concedes that its interest

We can solve this issue only by reading and interpreting the policy language. We are not bound by the trial court's legal conclusions when interpreting a contract. *Phillips v. Flowing Wells Unified Sch. Dist. No. 8 of Pima County*, 137 Ariz. 192, 194, 669 P.2d 969, 971 (App. 1983). Because the salient facts in this case are not in dispute, the trial court's decision was purely one of law for which we may substitute our own judgment. *See Stika v. Albion*, 150 Ariz. 521, 522, 724 P.2d 607, 608 (App.1986).[4]

The first question which must be asked is what is a mortgagee payee? The language contained in this policy is known as the New York, standard or union mortgage clause. *See* 5A John A. Appleman & Jean Appleman, *Insurance Law and Practice* § 3401, at 282 (1970). A mortgagee payee is different than what is normally called a loss payee under this type of policy. This difference is explained in *Granite State Ins. Co. v. Employers Mut. Ins. Co.*, 125 Ariz. 275, 277–78, 609 P.2d 90, 92–93 (App.1980):

> 5A J. Appleman, *Insurance Law and Practice* discusses the various types of payee clauses. A loss payee is defined in § 3335 as:
>
> > [A] mere appointee to receive the proceeds to the extent of his interest ... dependent upon the existence of an insurable interest in such appointee ... it makes the policy subject to any act or omission of the insured which might void, terminate, or adversely affect the coverage; and if the policy is not collectible by the insured, the appointee, likewise, cannot recover thereunder.

In contradistinction with a basic loss payee whose rights are totally derivative, a mortgagee payee has an independent agreement with the insurer. Appleman, *Id.*, discusses this in § 3401 as follows:

> [A] mortgage loss payable clause is, in effect, an independent agreement with the mortgagee, creating an independent contract between the company and the mortgagee for the latter's benefit. It is definitely true that this result obtains under a union or standard mortgage clause, it being considered that the insurer has entered into a separate contract with the mortgagee just as if the latter had applied for insurance entirely independently of a mortgagor.

In a loss payee context, the loss payee's rights are derivative, while in a mortgagee payee context, there is a separate contract between the insurer and the mortgagee which is independent from the insurer-named insured relationship. *See Fidelity–Phenix Fire Ins. Co. v. Garrison*, 39 Ariz. 277, 281, 6 P.2d 47, 48 (1931).[5]

It is also important to recognize that when dealing with an insurer's right to cancel a policy of insurance containing a standard mortgagee clause, there must be strict compliance with the terms of the agreement between the insurer and the mortgagee. *American Mercury Ins. Co. v. Inland–Western Fin. Co.*, 6 Ariz.App. 409, 411, 433 P.2d 60, 62 (1967).

It is important to realize that one purpose behind the clause is to protect the mortgagee (VNB) from the whims of the debtor; in this case, WBM's failure to pay its insurance premium. *See* 5A Appleman, *supra*, § 3401, at 292–93.[6]

---

as a loss payee was effectively canceled by the ten-day notice.

4. The dissent characterizes the majority as misconstruing the facts of this case. The factual issue has nothing to do with whether VNB was "misled." The question is simply what status VNB held and what kind of notice was required to satisfy that status.

5. It is the language in the policy that provides that insurance as to the mortgagee (VNB) shall not be invalidated by any act or neglect of the

mortgagor or owner of the property (WBM) that creates a contract between the mortgagee and the insurer which is separate and independent from the main contract between the insurer and the mortgagor. See 5A Appleman, *supra*, § 3401, at 282; *Fidelity–Phenix*, 39 Ariz. at 281, 6 P.2d at 48.

6. "A distinction which is rather important to grasp is that the policy terms are themselves not nullified by a standard mortgage clause. It is, rather, that a new contract containing those provisions is made with the mortgagee personal-

What then was the contractual duty of INA to its mortgagee payee when it canceled its obligations to the insured for non-payment of insurance premiums?

The Arizona Supreme Court, on more than one occasion, has indicated that when examining the language in an insurance policy to determine the duties of the parties, the purpose of the policy provisions in question, the purpose of the transaction as a whole, and public policy considerations are of prime importance. *See State Farm Mut. Auto. Ins. Co. v. Wilson*, 162 Ariz. 251, 253, 782 P.2d 727, 729 (1989).

The purpose of the cancellation provisions in the policy is to give INA the right to cancel its indemnity agreement with its *insured, WBM, if WBM* fails to pay the premiums. If cancellation of the agreement is on other grounds, the agreement provides that forty-five days notice is to be given. The policy clearly indicates that "you" means the insured WBM. Since the agreement between INA and the bank as a mortgagee payee is a separate contract, we must see if the policy specifically provides a time period for cancellation of the mortgagee payee's interest.

■ Neither the policy nor the facts before the trial court evidenced any specific provision concerning what time period would be required between the insurer and VNB when the insured WBM didn't pay its premiums. INA argues that if no time limit is specified for cancellation, we should adopt a reasonable time by implication. INA reasons that because Ariz.Rev.Stat. Ann. ("A.R.S.") section 20–1674(A) (1990) requires only ten days notice for non-payment of premium cancellation, and it is the provision dealing with Arizona's commercial insurance statutes, this is a reasonable time period which should be applied here. The problem with this argument is that VNB received no notice that *its* interest with INA was going to be canceled because

the insured WBM had not paid its premiums.

The cases cited by INA to support its contention that a ten-day time period should be sufficient contain clear language spelling out how an insurer may cancel the interest of a mortgagee. For example, in *Travelers Indemnity Co. v. Storecraft, Inc.*, 491 S.W.2d 745, 747 (Tex.App.1973), the policy provided: "This policy may be cancelled *as to the interest of any mortgagee named herein* by giving such mortgagee ten days written notice." (Emphasis added.) Similarly, in *Fort Hill Fed. Sav. & Loan Ass'n v. South Carolina Farm Bureau Ins. Co.*, 281 S.C. 532, 316 S.E.2d 684, 686 (App.1984), the policy specified:

> This Company reserves the right to cancel this policy at any time as provided by its terms, but in such case *this policy shall continue in force for the benefit only of the mortgagee (or trustee) for 10 days after notice to the mortgagee (or trustee) of such cancellation and shall then cease,* and this Company shall have the right, on like notice, to cancel this agreement. (Emphasis added.)

In *Mutual Creamery Ins. Co. v. Iowa Nat'l Mut. Ins. Co.*, 294 F.Supp. 337, 342 (D.Minn.1969), a case which was later reversed in 427 F.2d 504 (8th Cir.1970), the policy spelled out the method of canceling the mortgagee's interest thusly:

> *If loss hereunder is made payable, in whole or in part, to a designated mortgagee not named herein as insured, such interest in this policy may be canceled* by giving to such mortgagee a ten days' written notice of cancellation. (Emphasis added.)

As stated, INA's argument is that since there is no time limit specified in the policy regarding notice to VNB as mortgagee payee, a reasonable time period should be implied and that period should be ten days. The ten-day period is the period required in A.R.S. section 20–1674(A) which relates to

ly; and the mortgagee is not bound by the mortgagor's contract which, while it may be identical in language, may be breached by mortgagor's act. In other words, the indemnity of the mortgagee is not placed at the whim of his debtor, and is subject only to breach of

which the mortgagee is, himself, guilty. It has been properly stated that in some instances, certain of the provisions of the fire policy are modified and, under conditions, even omitted by the new agreement which springs from the mortgage clause and the insurance policy." *Id.*

commercial insurance statutes dealing with nonpayment of insurance premiums. Almost without exception, the cases cited by INA deal with contracts which provide for cancellation of a mortgagee's particular interest in the insurance.

It seems more reasonable when viewing the entire purpose of the transaction, public policy considerations, the specific language of the policy dealing with cancellation of the indemnity coverage, and the independent contract between the insurer and the mortgagee to say that the forty-five-day notice provision is clearly applicable. First, there is no evidence that VNB was ever notified that the cancellation of the policy for nonpayment of premiums was to apply to anyone other than the insured. Second, the notice itself does not refer to VNB as the mortgagee payee, nor does it state that VNB's interest is being terminated. Nothing in the notice was sufficient to put VNB on notice that INA was intending not only to cancel coverage to the insured who failed to pay the premiums, but also to cancel the interest of the bank which was insured by the same policy. It seems reasonable that VNB relied on the language of the policy which stated that but for the *insured's* failure to pay premiums, INA could "cancel the policy by sending to you, at the address shown in the Declarations, notice of the effective date of cancellation [which we] must do ... at least 45 days prior to the cancellation date...."

We reverse the portion of the trial court's judgment which held that the INA insurance policy was properly and effectively canceled as to VNB's mortgagee payee interests at the time of the fire loss. Additionally, we reverse the award of costs and attorney's fees made against VNB since INA can no longer be considered the successful party on VNB's claim against it. We remand to the trial court for entry of judgment declaring that VNB is entitled to insurance coverage to the extent it was a mortgagee payee and awarding VNB its taxable costs, and for a determination by the trial court of whether, in the court's discretion, VNB is entitled to attorney's

fees pursuant to A.R.S. section 12–341.01 (1982).

VNB requests attorney's fees as the successful party on appeal, which we grant to it pursuant to A.R.S. section 12–341.01. The amount will be determined after VNB files an affidavit in compliance with Rule 21(c), Arizona Rules of Civil Appellate Procedure.

SHELLEY, J., concurs.

JACOBSON, Judge, dissenting.

I must respectfully dissent because the majority opinion appears to rely upon a factual issue that was not raised in the trial court and first surfaced in VNB's reply brief; that is, whether VNB was misled by the notice of cancellation it received. This factual issue aside, in my opinion the majority misconstrues the law in this area.

First, as to the factual issue, the majority opinion takes the position that:

> [T]here is no evidence that VNB was ever notified that the cancellation of the policy for nonpayment of premiums was to apply to anyone other than the insured. Second, the notice itself never refers to VNB as the mortgagee payee, or that VNB's interest is being terminated. Nothing in the notice was sufficient to put VNB on notice that INA was intending to cancel coverage not only to the one who failed to pay the premiums, but also to cancel the interest of the mortgagee payee which was also insured by the same policy.

The issue whether VNB was somehow misled by the cancellation notice was not raised in the trial court. In the trial court, this matter was submitted upon a stipulated set of facts. In so far as the cancellation notice was concerned, that stipulation provided:

> 7. On May 28, 1985, INA mailed notices of cancellation of the policy to Wholesale Building Materials, Inc. and VNB. The cancellation notices were sent by INA because plaintiff's [sic] Kinshella were in default in payment in premium on the policy.

8. The notices stated that the INA policy was being cancelled effective June 10, 1985. A true and correct copy of the notice sent to VNB is attached as exhibit B....

9. VNB received a copy of the notice mailed to it by INA.

The contested issues presented to the trial court by VNB were:

1. Whether coverage exists for VNB's interests under the INA policy for the fire loss that occurred on July 3, 1985.

2. Whether VNB is entitled to forty-five days notice of INA's cancellation of the policy based on Kinshella's default in the payment of the policy premium.

The issue was never raised whether the notice, by reasons of its terms alone, was insufficient to cancel any interest VNB might have. Rather, the sole issue presented to the trial court was whether VNB was entitled to a 45-day notice, a 10-day notice, or a reasonable notice. This was also the only issue raised in the opening brief on appeal. Only in the reply brief is it first hinted that the notice did not alert VNB as to the reason for cancellation.

The law is well-established that issues not raised in the trial court or raised for the first time in the reply brief on appeal are waived. *Quila v. Schafer's Estate,* 7 Ariz.App. 301, 302, 438 P.2d 770, 771 (1968); *see also* Rule 13(c), Arizona Rules of Civil Appellate Procedure.

This leaves us with the bare legal issue of the period of time an insurer must extend to a mortgagee payee before its interest can be canceled, where the mortgagor has failed to pay premiums. Again, for ease of reference, the applicable provision of the policy is repeated:

We can cancel the policy by sending to you, at the address shown in the Declarations, notice of the effective date of cancellation. We must do this at least 45 days prior to the cancellation date unless we are cancelling the policy because you failed to pay your premiums. In that case, we will give you only 10 days' notice. Mailing or delivery of the notice will be proof that you were informed of the cancellation. *We will also notify any mortgagee shown in the Declarations.*

(Emphasis added).

The majority opinion correctly points out that the policy does not contain a specific provision dealing with what type of notice the mortgagee was entitled to receive or how much notice was required. However, a simple reading of the foregoing provision leaves one with the reasonable assumption that the 45-day notice applies to any cancellation reason other than failure to pay premiums, and in that case only a 10-day notice is required and the mortgagee will receive that *same type of notice.*

Even assuming this provision does not set forth the requisite notice to the mortgagee, then it is submitted that the only case cited by either party that deals with this situation points to the correct resolution. In *Standard Fire Insurance Co. v. United States,* the court held that where cancellation of a policy is the result of nonpayment of premiums, the interest of the mortgagee payee could not be canceled without giving "reasonable" notice. 407 F.2d 1295, 1299 (5th Cir.1969).

The majority rejects a reasonable notice on the basis among others, that the bank should not be subjected to the whims of its debtor, specifically the failure to pay premiums, citing *Appleman.* In my opinion, the majority reads too much into the "separate contract" principle. VNB has never contended that INA could not cancel the policy because of the failure of the property owner to pay premiums. The parties' only disagreement is how much notice VNB was entitled to receive because of this "neglect" by the property owner.

The majority, relying upon the contention that VNB did not receive sufficient notice that *its* interest was to be canceled, both rejects the clear legislative intent that 10-day notice of cancellation is commercially reasonable, A.R.S. section 20-1674(A), and opts for a 45-day notice. As previously pointed out, this simply is not an issue in this lawsuit.

In my opinion, the sufficiency of the notice given to VNB is a red herring. Legally, VNB, as mortgagee payee, was entitled to reasonable notice that the policy under which it claimed an interest was to be canceled. It received such notice. A.R.S. section 20–1674(A) establishes 10 days as a commercially reasonable time to give notice.

If public policy reasons are to be examined in determining the reasonableness of the time, then it is submitted that an insured who has mortgaged property and is unable to pay premiums may have an incentive to see that its debts are paid through insurance. Providing a relatively short period of time before such incentives become overwhelming appears to be in the public interest.

I would affirm.

## APPENDIX A

INSURANCE COMPANY OF NORTH AMERICA
(Insert Name of Issuing Company)

P. O. BOX 37130, PHOENIX, AZ 85069
(Address)

**CANCELLATION NOTICE**

You are notified that we are herewith cancelling your policy indicated below, in accordance with its terms, and all liability thereunder will terminate, effective as stated below. Unearned premium, if any (if not tendered), will be refunded on demand.

INSURED

WHOLESALE BUILDING MATERIALS, INC.
RIVIERA BLVD.
RIVIERA, AZ 86442

AGENT

BOURNE-LEAVITT INSURANCE AGENCY, INC.
1627 HIGHWAY 95
RIVIERA, AZ 86442

| POLICY NUMBER |
| --- |
| RWP D1 02 42 47 2 |

LOCATION
(If different from Insured's address)

CANCELLATION EFFECTIVE

THE 10TH DAY OF JUNE 19 85
AT THE HOUR STATED IN THE POLICY FOR THE INCEPTION OF THE POLICY.

OFFICE OR AGENCY PREPARING THIS NOTICE

PHOENIX/546

LOSS PAYEE

VALLEY NATIONAL BANK
P. O. BOX 1236
BULLHEAD CITY, AZ 86430

*P. Rotta*

P. Rotta/jps
Authorized Signature

MS-8080 Ptd In U S A.

LOSS PAYEE COPY

2