IN THE

# ARIZONA COURT OF APPEALS

DIVISION TWO

---

DATE STREET CAPITAL, LLC,
AN ARIZONA LIMITED LIABILITY COMPANY,
*Plaintiff/Appellant*,

*v.*

CLEARCOVER INSURANCE COMPANY,
AN ARIZONA DOMESTIC INSURER,
*Defendant/Appellee*.

No. 2 CA-CV 2023-0065
Filed November 21, 2023

---

Appeal from the Superior Court in Maricopa County
No. CV2022006823
The Honorable Brad H. Astrowsky, Judge

**VACATED AND REMANDED**

---

COUNSEL

Law Offices of Adam B. Decker PLLC, Tempe
By Adam B. Decker
*Counsel for Plaintiff/Appellant*

Elardo, Bragg, Rossi & Palumbo P.C., Phoenix
By John A. Elardo
*Counsel for Defendant/Appellee*

**OPINION**

Judge Eckerstrom authored the opinion of the Court, in which Presiding Judge Brearcliffe and Judge Kelly concurred.

E C K E R S T R O M, Judge:

**¶1**        In this automobile insurance coverage dispute, Date Street Capital, LLC appeals from the superior court's dismissal of its complaint for failure to state a claim. For the following reasons, we vacate the dismissal and remand for further proceedings consistent with this opinion.

**Factual and Procedural Background**

**¶2**        We view the facts in the light most favorable to Date Street, the non-moving party. *Mirchandani v. BMO Harris Bank*, 235 Ariz. 68, ¶¶ 2, 7 (App. 2014). In so doing, we "accept the well pled facts alleged in the complaint as true." *Id.* ¶ 7.

**¶3**        In February 2019, Sonya Leeds bought a car, financed by Date Street, the secured lienholder. The car served as collateral for the loan. In the purchase agreement, Leeds agreed to obtain insurance on the car that would specifically identify Date Street as a loss payee. Leeds further agreed that she had arranged for such insurance and had instructed the insurance agent to include a loss-payable endorsement in favor of Date Street. Leeds obtained an insurance policy through Clearcover Insurance Company.

**¶4**        In October 2020, the car was damaged. Leeds filed an insurance claim, which Clearcover denied, claiming the policy was null and void from its inception and rescinding the policy. As grounds, Clearcover stated that Leeds had left herself off as a listed driver and taken the policy out in the name of her ex-husband, despite the fact that he was in prison at the time and not scheduled to be released until March 2021. Consequently, Clearcover denied all coverage, including Leeds's claim relating to the October 2020 loss.

**¶5**        In May 2022, Date Street filed this action, naming Clearcover as the defendant and seeking a judicial declaration of its rights and interests in the insurance policy and the claim relating to the loss of the car. After full briefing, the superior court granted Clearcover's motion to dismiss for failure to state a claim. *See* Ariz. R. Civ. P. 12(b)(6). The court concluded

that Date Street has no legal interest in the matter as lienholder to a vehicle with a rescinded insurance policy. It further reasoned that Date Street has no interest in the claim because it is not in privity of contract with Clearcover, and thus Date Street lacks standing to directly bring suit against the insurance company. The court entered final judgment in January 2023.

¶6        Date Street timely appealed. We have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1) and 12-2101(A)(1).

**Discussion**

¶7        Date Street argues dismissal was erroneous because: (1) the superior court failed to determine the nature of the loss-payable clause in the insurance contract; (2) privity does exist between Date Street and Clearcover; (3) Date Street is entitled to declaratory relief; and (4) the court improperly considered materials outside the pleadings without converting the motion to dismiss to a motion for summary judgment, as required by Rule 12(d), Ariz. R. Civ. P. We review de novo an order dismissing a complaint for failure to state a claim. *Abbott v. Banner Health Network*, 239 Ariz. 409, ¶ 7 (2016). Because our factual review differs between appeals from Rule 12(b)(6) dismissals and those from grants of summary judgment, we turn first to the issue of whether the court properly considered evidence outside the pleadings before granting dismissal under Rule 12(b)(6). *Compare Cullen v. Auto-Owners Ins. Co.*, 218 Ariz. 417, ¶ 7 (2008) (on Rule 12(b)(6) motion, "Arizona courts look only to the pleading itself" and must "assume the truth of the well-pled factual allegations and indulge all reasonable inferences therefrom") *with Workman v. Verde Wellness Ctr., Inc.*, 240 Ariz. 597, ¶ 16 (App. 2016) (summary judgment appropriate when only one inference may be drawn from undisputed material facts).

**I.   Conversion to Motion for Summary Judgment**

¶8        Date Street argues the superior court improperly relied on evidence extraneous to the complaint by considering Clearcover's recission letter, attached as an exhibit to its motion to dismiss, and the purchase agreement between Leeds and Date Street, attached to Date Street's response. With few exceptions, if on a motion to dismiss under Rule 12(b)(6), "matters outside the pleadings are presented to, and not excluded by, the court, the motion must be treated as one for summary judgment under Rule 56." Ariz. R. Civ. P. 12(d); *see also Coleman v. City of Mesa*, 230 Ariz. 352, ¶ 9 (2012). In such cases, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Ariz. R. Civ. P. 12(d).

**¶9**        In determining whether a motion to dismiss must be converted into one for summary judgment under Rule 12(d), "the element that triggers the conversion . . . is a challenge to the sufficiency of the pleader's claim supported by extra-pleading material." *Brosie v. Stockton*, 105 Ariz. 574, 576 (1970) (quoting 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1366 (1st ed. 1969)).  Thus, the conversion rule is inapplicable when a court does not rely on the extra-pleading material in its ruling or when the material is an official public record. *Strategic Dev. & Constr., Inc. v. 7th & Roosevelt Partners, LLC*, 224 Ariz. 60, ¶¶ 8, 13 (App. 2010).  Nor is summary judgment conversion required when a motion to dismiss attaches "extraneous matters [that] neither add to nor subtract from the deficiency of the pleading."  *Id.* ¶ 8 (quoting *Brosie*, 105 Ariz. at 576).  Likewise, materials that, "although not appended to the complaint, are central to the complaint" may be considered without conversion. *Id.* ¶ 14 (rationale underlying conversion rule is that "plaintiff must be given an opportunity to respond" when Rule 12(b)(6) motion includes material extraneous to complaint, but "purpose is not served" when motion cites document central to complaint because plaintiff obviously on notice of contents of such document); *but see Workman*, 240 Ariz. 597, ¶ 13 (noting Arizona Supreme Court has suggested disapproval of this exception).

**¶10**        Date Street's complaint referenced the purchase agreement, the document it eventually attached to its response in opposition to dismissal.  That document therefore falls within the "central to the complaint" exception to the conversion rule, as Date Street undisputedly had notice of its contents. *Strategic Dev. & Constr.*, 224 Ariz. 60, ¶ 14.

**¶11**        But Date Street's complaint did not reference the recission letter attached to Clearcover's motion to dismiss, nor did it assert or acknowledge any of the factual assertions contained in that letter.  Rather than taking as true the complaint's allegation that Leeds had obtained an insurance policy protecting Date Street's secured interest through a loss-payable clause, the superior court instead gave credence to assertions contained in the letter, which was not included in the complaint but rather attached to Clearcover's motion to dismiss.  The court then expressly relied on these assertions in granting Clearcover's motion to dismiss.  For example, the court noted that because Leeds had fraudulently obtained the insurance policy, it was "properly rescinded."  The court therefore concluded that the complaint failed to state a claim because Date Street has "no legal interest in the matter," as "a lienholder to a vehicle with a rescinded insurance policy."

¶12 In so concluding, the superior court improperly relied on factual assertions not contained in the complaint, which were "necessary to support its rationale for dismissal." *Workman*, 240 Ariz. 597, ¶ 10 (quoting *Belen Loan Invs., LLC v. Bradley*, 231 Ariz. 448, ¶ 7 (App. 2012)). This is the sort of reliance on material, extrinsic documents that Rule 12(d) seeks to prevent. *See Strategic Dev. & Constr.*, 224 Ariz. 60, ¶ 8. The court therefore erred in failing to convert the motion to dismiss into one for summary judgment. *See Workman*, 240 Ariz. 597, ¶¶ 11, 13; *see also* Ariz. R. Civ. P. 12(d).

¶13 Such error, however, is not necessarily reversible. Because appellate courts review a grant of summary judgment de novo, *Ariz. Elec. Power Coop., Inc. v. DJL 2007 LLC*, 246 Ariz. 534, ¶ 29 (App. 2019), in some cases it is appropriate for us to review the record and determine whether summary judgment would have been proper had the motion properly been converted from a motion to dismiss, *see, e.g.*, *Blanchard v. Show Low Plan. & Zoning Comm'n*, 196 Ariz. 114, ¶¶ 11, 44 (App. 1999) (treating superior court's grant of motion to dismiss as one for summary judgment and reviewing record under summary judgment standards where parties stipulated to consideration of evidence extrinsic to complaint, ultimately affirming dismissal).

¶14 Such a determination on this record would be improper because Date Street received no opportunity to discover or present evidence to rebut the allegations raised by Clearcover's motion to dismiss and the recission letter. *See* Ariz. R. Civ. P. 12(d); *see also Young v. Rose*, 230 Ariz. 433, ¶¶ 25, 28-30 (App. 2012) (appellate court's resolution of superior court's ruling under summary judgment standards improper when determination of legal matters necessarily entailed further review of matters not yet in evidence and parties did not have opportunity to present evidence contemplated by Rule 12). In particular, whether Date Street has standing to sue, is in contractual privity with Clearcover, or has a legally cognizable claim for declaratory judgment all turn on the existence and nature of the loss-payable clause naming it as lienholder in the underlying insurance contract.

## II. Loss-Payable Clause

¶15 The superior court based its dismissal on the conclusion that Date Street—"merely a lienholder"—has "no legal interest" in the matter. It so concluded by reasoning, without reviewing the underlying insurance contract, that Date Street had "not obtained an assignment of the former insured's rights under [the] policy with Clearcover." The court further

cited the general rule that "an insurance policy is a personal contract between the insurer and the insured," as set forth in *Allen v. Hamman Lumber Co.*, 44 Ariz. 145, 149 (1934).

¶16 Like all contracts, however, insurance contracts must be construed to "ascertain and enforce" the intent of the parties. *See ELM Ret. Ctr., LP v. Callaway*, 226 Ariz. 287, ¶ 15 (App. 2010). As *Allen* itself ultimately concluded, an insurance policy may be interpreted as assigning its benefits to a lienholder, either through express language in the policy or through the acts of the parties, under general principles of equity. 44 Ariz. at 150-51 (concluding insurer assented through acts to assignment of contractual rights to lienholder); *see also* A.R.S. § 20-1122 ("A policy may be assignable or not assignable, as provided by its terms."). Thus, consideration of the insurance contract itself is necessary to determine whether Date Street, as lienholder, is an assignee under the terms of the contract.

¶17 Arizona courts have not squarely addressed this issue in the context of automobile insurance contracts. However, in other contract matters, our courts have long joined the majority of jurisdictions in distinguishing between "simple" or "open" loss-payable or mortgage clauses and more protective clauses. The latter—known interchangeably as "standard," "union," or "standard union" mortgage clauses—generally assign contractual rights directly to a lienholder, thereby insulating said lienholder from wrongdoing by the insured that would otherwise invalidate the insurance contract.[1] *See, e.g., Fidelity-Phenix Fire Ins. Co. v. Garrison*, 39 Ariz. 277, 281 (1931) (recognizing union mortgage clause as creating "new relation" between insurer and lienholder, "independent of the contract" between insurer and original insured); V*alley Nat. Bank of Ariz. v. Ins. Co. of N. Am.*, 172 Ariz. 212, 215 (App. 1992) (adopting distinction described in *Fidelity-Phenix* between a basic loss-payable clause and what is

---

[1]The other category of loss-payable or mortgage clauses—alternatively called "simple," "open," or "ordinary"—is less protective of a lienholder's rights, which are fully derivative of the insured's rights. *See* V*alley Nat. Bank of Ariz. v. Ins. Co. of N. Am.*, 172 Ariz. 212, 215 (App. 1992); *In re Tower Air, Inc.*, 397 F.3d 191, 193, 195, 203-04 (B.A.P. 3d Cir. 2005) (applying Arizona law in bankruptcy action involving secured creditor's efforts to collect insurance proceeds intended to pay for damage to its collateral while retaining fully repaired collateral); *see also* 4 Steven Plitt et al., *Couch on Insurance* § 65:8 (3d ed. 2023 update).

"known as the New York, standard or union mortgage clause"); *see also* 4 Steven Plitt et al., *Couch on Insurance* § 65:32 (3d ed. 2023 update) (collecting cases).

¶18 A lienholder named in a standard loss-payable mortgage clause has traditionally been allowed to collect on an insurance policy despite the insured's fraud or misconduct in obtaining the policy. *See, e.g.*, *Meemic Ins. Co. v. Jones*, 984 N.W.2d 57, 59-60 (Mich. 2022) (material misrepresentation on homeowner's insurance application); *Nationwide Mut. Ins. Co. v. Hunt*, 488 S.E.2d 339, 340-41, 343-44 (S.C. 1997) (insured's acts of fraud, intentional concealment, and misrepresentation causing loss in fire insurance context). And, a number of jurisdictions have applied this interpretation of standard loss-payable mortgage clauses directly to automobile insurance contracts. *See, e.g.*, *Reliable Credit Ass'n, Inc. v. Progressive Direct Ins. Co.*, 287 P.3d 698, ¶¶ 35-37, 46 (Wash. Ct. App. 2012) (exclusionary clause did not prevent secured lienholder from collecting insurance following insured's intentional destruction of vehicle by arson); *Farmers State Bank of Russell v. W. Nat'l Mut. Ins. Co.*, 454 N.W.2d 651, 653 (Minn. Ct. App. 1990) (clarifying that standard mortgage clause allows recovery by loss payee even where insured misrepresented material facts to insurer); *Int'l Surplus Lines Ins. Co. v. Assocs. Com. Corp.*, 514 So. 2d 1326, 1328 (Ala. 1987) (allowing lienholder to collect notwithstanding exclusion of driver involved in loss). As our supreme court has reasoned, a loss payee, presented with an insurance policy containing "a standard mortgage clause attached thereto in his favor, is justified in assuming that the insurance company has satisfied itself that the policy is valid and free from impeachment for any conduct or act of the assured at its inception or prior to the attachment of the mortgage clause." *Germania Fire Ins. Co. of N.Y. v. Bally*, 19 Ariz. 580, 585 (1918). We likewise hold that in Arizona, a loss payee properly named in a standard loss-payable mortgage clause is entitled to collect under an automobile insurance policy, notwithstanding a misrepresentation by the applicant at the inception of the contract.

¶19 A second line of jurisprudence in the automobile context also supports this result. Under A.R.S. § 20-1109, an automobile insurer may rescind an insurance policy from its inception if the insured has committed "legal fraud that was material to the insurer's accepting" the risk of issuing the policy. *Valley Farms, Ltd. v. Transcon. Ins. Co.*, 206 Ariz. 349, ¶ 12 (App. 2003). But under the Vehicle Insurance and Financial Responsibility Act,[2]

---

[2]Arizona's former Motor Vehicle Safety Responsibility Act, A.R.S. §§ 28-1101 through 28-1262, "is now called the Vehicle Insurance and

an automobile insurance carrier's liability "becomes absolute when injury or damage covered by the motor vehicle liability policy occurs." A.R.S. § 28-4009(C)(5)(a). The purpose of this statute is to provide "security against uncompensated damages arising from operation of motor vehicles on our highways." *Chase v. State Farm Mut. Auto. Ins. Co.*, 131 Ariz. 461, 464 (App. 1982). We have thus concluded that an automobile insurance carrier may not fully rescind a policy from its inception, even as provided by § 20-1109, once an innocent third party is injured in an automobile accident. *See Midland Risk Mgmt. Co. v. Watford*, 179 Ariz. 168, 173 (App. 1994) (Vehicle Insurance and Financial Responsibility Act "mandates coverage following an accident with injuries or damage notwithstanding the insurer's inability to discover fraudulent representations made in the insurance application"); *see also Prudential v. Est. of Rojo-Pacheco*, 192 Ariz. 139, 144-45 (App. 1997) (limiting *Watford* to "minimum coverage limits mandated by" § 28-4009). Although Date Street is not an injured party in the same sense as an individual bodily injured in a motor vehicle accident, its financial interest in the car at issue in this case is certainly injured by the loss of the car — the collateral on its secured interest in the lien.

¶20　　　In short, whether Date Street's complaint presents a cognizable legal claim turns at least in part on the factual question of whether the insurance contract contains a basic loss-payable mortgage clause or, instead, a standard mortgage clause such that an independent contractual obligation runs between Clearcover and Date Street. In light of the unresolved dispute over that material fact, summary judgment was improper without providing both parties the opportunity to present evidence regarding the insurance contract's loss-payable clause. *See Strategic Dev. & Constr.*, 224 Ariz. 60, ¶ 14. Likewise, the superior court's determination that no privity of contract exists between Date Street and Clearcover hinges on whether any clause in that contract does, in fact, assign rights to Date Street, whether as a loss payee or otherwise. *Cf. Highland Vill. Partners, L.L.C. v. Bradbury & Stamm Constr. Co.*, 219 Ariz. 147, ¶ 13 (App. 2008) (express assignment places assignee in privity with other party to contract); *Farmers Ins. Exch. v. Udall*, 245 Ariz. 19, ¶¶ 13, 16 (App.

---

Financial Responsibility Act, A.R.S. §§ 28-4001 through 28-4153." *Prudential v. Est. of Rojo-Pacheco*, 192 Ariz. 139, 141 & n.1 (App. 1997). Effective January 1, 1998, former A.R.S. § 28-4079 was renumbered as § 28-4009. *See* 1997 Ariz. Sess. Laws, ch. 87, § 12.

2018) (same, even as to post-loss assignments of rights under insurance policies).

**¶21**          With neither party having disclosed the terms of the insurance contract, the superior court had no basis to dismiss Date Street's request for declaratory relief.  By its plain text, the Uniform Declaratory Judgments Act confers upon Arizona courts the "power to declare rights, status, and other legal relations whether or not further relief is or could be claimed."  A.R.S. § 12-1831.  So long as Date Street has standing under the terms of the insurance contract and presents a judiciable claim, the declaratory judgments statute "is remedial and therefore liberally construed."  *Mills v. Ariz. Bd. of Tech. Registration*, 253 Ariz. 415, ¶ 25 (2022).  As with the question of privity, the validity of Date Street's legal interest in the matter turns on the loss-payable language contained in the contract.

## III.  Attorney Fees

**¶22**          Date Street requests its attorney fees incurred on appeal, pursuant to A.R.S. §§ 12-341.01 and 12-1840.[3]  In our discretion, we deny that request, without prejudice to Date Street renewing the request in the superior court if ultimately the successful party.

## Disposition

**¶23**          For the foregoing reasons, we vacate the superior court's dismissal of Date Street's complaint and remand for further proceedings consistent with this opinion.

---

[3]Clearcover does not request its fees on appeal.